*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  May 5, 2016                    104917
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

MICHAEL A. VICTOR JR.,
                        Appellant.
_____

Calendar Date:  January 13, 2016

Before:  Peters, P.J., Garry, Egan Jr., Rose and Clark, JJ.

_____

        Ostrer & Associates, PC, Chester (Benjamin Ostrer of
counsel), for appellant.

        Joseph A. McBride, District Attorney, Norwich (Michael J.
Genute of counsel), for respondent.

_____

Clark, J.

        Appeal from a judgment of the County Court of Chenango
County (Sullivan, J.), rendered December 16, 2011, upon a verdict
convicting defendant of the crimes of criminal possession of a
controlled substance in the second degree, criminal possession of
a controlled substance in the third degree (two counts),
conspiracy in the second degree, criminal possession of a weapon
in the second degree (three counts) and criminal possession of a
weapon in the third degree (three counts).

        In January 2009, the Town of Norwich Police Department
commenced an investigation into the sale of narcotics and
centered its investigation around Tonya Jenkins and her daughter,
Currisa Jenkins (hereinafter Jenkins), defendant's paramour.

During the investigation, several controlled buys of cocaine and heroin were made from Cassie Brooks, Tonya Jenkins and Jenkins. In March 2009, police obtained a search warrant for the residence of Jenkins (hereinafter the residence), which, upon execution, resulted in the arrest of Jenkins and defendant. Police searched the residence and seized marihuana, cocaine, several thousand dollars, multiple cell phones, a shotgun, ammunition, two cars, keys to a storage unit and keys to a vehicle not found at the residence. As a result, defendant was charged by indictment with one count of criminal possession of a controlled substance in the third degree.

In April 2009, based upon the storage unit and car keys seized during the search of the residence and upon recorded phone calls made by Jenkins while she was in jail, police obtained and executed a search warrant for a storage unit in the Town of Norwich, Chenango County that was rented by Jenkins and seized a Mercedes automobile, as well as a backpack containing narcotics, drug paraphernalia, weapons and ammunition. Defendant was subsequently charged in a second indictment with criminal possession of a controlled substance in the second degree, criminal possession of a controlled substance in the third degree, conspiracy in the second degree, criminal possession of a weapon in the second degree (three counts) and criminal possession of a weapon in the third degree (three counts). The indictments were thereafter consolidated. In 2010, Jenkins pleaded guilty to criminal possession of a controlled substance in the fifth degree and was released from jail on the condition that she testify against defendant. Following a jury trial, at which Jenkins testified, defendant was convicted as charged and sentenced to an aggregate prison term of 34 to 39 years. Defendant now appeals.

Defendant argues that his cell phone was illegally seized at the residence because the search warrant did not specifically refer to cell phones as an item to be seized. We disagree. The search warrant for the residence authorized, among other things, the seizure of "any records . . . pertaining to any illicit controlled substance activities or transactions" and "[a]ny computers, central processing units, external and internal drives and external and internal storage equipment or media, terminals

or video display units . . . and any and all computing or data processing software, or data including, but not limited to: hard disks, floppy disks, cassette tapes, video cassette tapes, magnetic tapes, integral ram or rom units, and any other permanent or portable storage devices(s)."  This language was sufficiently particular to allow the police to identify a cell phone as an item to be seized pursuant to the warrant, inasmuch as a cell phone qualifies as a computer and/or storage device capable of maintaining records "pertaining to . . . illicit controlled substance activities or transactions" (People v Church, 31 AD3d 892, 893-894 [2006], lv denied 7 NY3d 866 [2006]; see generally People v Nieves, 36 NY2d 396, 401 [1975]).

Defendant also contends that the police did not listen to or obtain Jenkins' recorded jail telephone conversations, which formed the basis for the search warrant for the storage unit, until after the warrant was executed and that County Court improperly denied him a Alfinito/Franks hearing to challenge the veracity of the affidavits submitted in support of the application for that search warrant.  The factual information contained in Officer Michael Purdy's supporting deposition, which was attached to the search warrant application, was based in part upon a recorded jail telephone conversation between Jenkins and another individual and set forth sufficient information to support a reasonable belief that evidence of criminality would be found in the storage unit (see People v Pinkney, 90 AD3d 1313, 1315-1316 [2011]; People v Church, 31 AD3d at 894).  Defendant relies on Purdy's testimony at a pretrial suppression hearing to establish that he was entitled to an Alfinito/Franks hearing.  Although Purdy acknowledged at that hearing that at least one of Jenkins' recorded conversations was obtained and listened to after the warrant was executed, Purdy testified that the conversation referenced in his supporting deposition was listened to prior to issuance of the warrant.  As defendant failed to satisfy his burden of proving that either the search warrant application for the storage unit or Purdy's supporting deposition contained false statements that were made knowingly, intentionally or recklessly to establish probable cause, County Court properly denied his request for an Alfinito/Franks hearing (see People v Estrella, 48 AD3d 1283, 1285-1286 [2008], affd 10 NY3d 945 [2008], cert denied 555 US 1032 [2008]; People v Folk,

44 AD3d 1095, 1097 [2007], lv denied 9 NY3d 1006 [2007]; People v Richardson, 28 AD3d 1002, 1005 [2006], lv denied 7 NY3d 817 [2006]; People v Griffin, 234 AD2d 718, 720 [1996], lv denied 89 NY2d 1036 [1997]).

Additionally, with the exception of defendant's conviction on count 10 of the consolidated indictment, criminal possession of a defaced weapon (see Penal Law § 265.02 [3]), we are unpersuaded by defendant's contention that the verdict is against the weight of the evidence. In conducting a weight of the evidence review, this Court must first determine whether a different conclusion would have been unreasonable and, if such conclusion would not have been unreasonable, we then "weigh[] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony while viewing the evidence in a neutral light and giving deference to the jury's credibility assessments" (People v Gibson, 121 AD3d 1416, 1418 [2014] [internal quotation marks omitted], lv denied 24 NY3d 1119 [2015]; see People v Romero, 7 NY3d 633, 643 [2006]).

Defendant specifically raises the issue of constructive possession as to the drugs found in the shared residence and the items found in the storage unit, including 299 grams of cocaine, digital scales with white powder residue, a 9 millimeter Luger pistol, TEC-9 model, a Colt Trooper .357 Magnum revolver and a Jennings .22lr pistol. "Constructive possession can be established by evidence that the defendant had dominion and control over the weapon [or drugs] or the area in which it was found" (People v Bellamy, 118 AD3d 1113, 1114 [2014], lv denied 25 NY3d 1159 [2014] [citation omitted]; see People v Dawson, 110 AD3d 1350, 1352 [2013], lv denied 23 NY3d 1035 [2014]). "Exclusive access, however, is not required to sustain a finding of constructive possession" (People v Bellamy, 118 AD3d at 1114 [citation omitted]; see Penal Law § 10.00 [8]; People v Stewart, 95 AD3d 1363, 1364 [2012], lv denied 19 NY3d 1001 [2012]). "Constructive possession of the drugs [or weapons] at issue may be established through circumstantial proof and 'any conflict in the evidence regarding [a] defendant's dominion and control over the [drugs and weapons] in question . . . create[s] issues of witness credibility, and the jury's determination in that regard

must be accorded great deference'" (People v Crooks, 129 AD3d 1207, 1208-1209 [2015] [citation omitted], lv granted 26 NY3d 966 [2015], quoting People v McCoy, 302 AD2d 797, 797-798 [2003], lv denied 100 NY2d 540 [2003]; see People v McLeod, 281 AD2d 746, 747 [2001], lv denied 96 NY2d 921 [2001]).

Here, the trial testimony given by Purdy, Jenkins, Brooks and three other witnesses who observed defendant's drug activity, along with the physical evidence recovered from the residence and the storage unit established defendant's role in the drug enterprise, as well as his possession of narcotics, illegal weapons and ammunition. More particularly, with respect to counts 1 through 4, Purdy testified that, upon execution of the search warrant for the residence, police discovered roughly 2.88 grams of cocaine in a pair of pants belonging to defendant. In addition, the testimony of Purdy and Jenkins established that defendant acted in concert with Jenkins to possess over four ounces of cocaine, a class A-II felony (see Penal Law § 220.18 [1]), and to store that cocaine in the storage unit, which Jenkins rented at defendant's request so that both the drugs and weapons would be removed from the residence (see People v Harris, 288 AD2d 610, 617-618 [2001], affd 99 NY2d 202 [2002]; People v Rodriguez, 274 AD2d 826, 827-828 [2000], lv denied 95 NY2d 938 [2000]). Jenkins testified at length about how she and defendant purchased the cocaine on a weekly basis in order to sell it for a profit.

As to defendant's constructive possession of the loaded firearms found in the storage unit (counts 5 through 7), Jenkins testified that she had previously observed defendant in possession of several of the seized weapons and saw him place the weapons in the backpack found inside of the trunk of the Mercedes. Jenkins' testimony in this regard was corroborated by the testimony of Brooks, who stated that she had observed defendant possess weapons, including some of the weapons found in the storage unit, and of Paul Law, who testified that he had observed defendant in possession of the 9 millimeter Luger pistol, TEC-9 model. Furthermore, DNA evidence linked defendant to one of the weapons and defendant stated, during his telephone conversations in jail, that he wanted his brother to retrieve his Mercedes from storage. Together, this evidence established that

defendant exercised dominion and control over the items found in the storage unit (see People v Bellamy, 118 AD3d at 1114; People v Robinson, 72 AD3d 1277, 1277-1278 [2010], lv denied 15 NY3d 809 [2010]).  Thus, defendant's convictions on counts 1 through 7 are not against the weight of the evidence.

Defendant's convictions on counts 8 and 9 of the consolidated indictment are similarly not against the weight of the evidence.  In addition to the foregoing evidence supporting the convictions for criminal possession of a weapon in the second degree, Purdy's testimony established that the operable 9 millimeter Luger pistol, TEC-9 model, was found in the storage unit along with a large capacity ammunition feeding device capable of holding 30 rounds and that, therefore, the firearm constituted an assault weapon (count 8) (see Penal Law §§ 265.02 [7]; 265.00 [22] [c]).  Purdy's testimony also established that the serial number on the 9 millimeter Luger Pistol, TEC-9 model, found in the storage unit had been "scratched, etched . . . or ground off" (count 9).

In contrast, however, no evidence was presented to establish that the serial number on the Colt Trooper .357 Magnum revolver had been defaced (count 10) (see Penal Law § 265.02 [3]).  The photographs of the Colt Trooper .357 Magnum revolver that were admitted into evidence do not reflect that the serial number was defaced, and Purdy's testimony at trial did not address the condition of the serial number on that revolver.  Thus, defendant's conviction on count 10 of the consolidated indictment must be reversed as against the weight of the evidence.

Defendant raises issues as to County Court's handling of three jury notes — specifically, Court exhibit Nos. 1, 3 and 5 — and argues that the court's alleged mishandling of those notes constituted mode of proceedings errors.  We disagree with defendant with respect to exhibits Nos. 1 and 3, but agree as to exhibit No. 5.

Court exhibit No. 1 stated, "replay phone calls."  Upon receiving the note, County Court stated, "We have a question. The jury wants to hear the tapes.  My understanding is they want

to hear all the tapes.  And in the courtroom is defendant, attorneys, District Attorney, everybody is in agreement that Deputy Chief Marsh will replay the tapes?"  No objection was lodged and, after the jury returned to the courtroom and the jurors nodded yes in response to the court's query as to whether they wanted to hear all of the recordings, the recorded telephone calls were replayed.

Thereafter, the jury sent out another note, marked as Court exhibit No. 3, which stated, "Luger #5 # 9 assault."  In the presence of defendant, counsel and the jury, County Court addressed the jury, stating, "The note from the jury says Luger, No. 5 and No. 4 or No. 9, I can't tell for sure, assaults.  Do you want to see the exhibits?  Do you want to have me read definitions?  Tell me what it is you'd like to have."  Following a brief response from juror No. 1, a request by the District Attorney to approach the bench with defense counsel and an ensuing "[o]ff-the-record discussion at the bench with defendant present," the court informed the jury that counts 5, 8 and 9 all related to the same Luger weapon and reread the jury charges for those counts.  Thereafter, an exchange took place between the court and juror No. 1.  The court eventually stated, "These are conversations more appropriate for . . . the jury[ ] to discuss in the privacy of . . . deliberations."  Neither the People nor defense counsel objected or discussed the foregoing exchange with the court.

Later, the jury sent out another note, marked as Court exhibit No. 5, which stated that "we have reach[ed] agreement on 9 of the 10 charges # 8G 4NG."  Shortly thereafter — apparently while County Court was "discussing what to do with" Court exhibit No. 5 off the record — another note, marked as Court exhibit No. 6, came from the jury stating, "Ready."  Addressing the attorneys and defendant outside the presence of the jury, County Court "indicate[d] for the record" that it had received a note from the jury stating, "We've reached agreement on nine out of the ten charged."[1]  Defense counsel and the People agreed that if the

---

[1]  When County Court read this note aloud to the attorneys outside the presence of the jury, it indicated, "Court Exhibit 5

jury had a complete verdict, they were "ready to go," but that the court should send the jury back for further deliberations if there was only a partial verdict. There was no further discussion with respect to exhibit No. 5.

CPL 310.30 provides that a deliberating jury may request additional "instruction or information with respect to . . . any . . . matter pertinent to [its] consideration of the case" and that, "[u]pon such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the [P]eople and counsel for the defendant, . . . must give such requested information or instruction as the court deems proper" (see People v O'Rama, 78 NY2d 270, 276 [1991]). "CPL 310.30 thus imposes two separate duties on the [trial] court following a substantive juror inquiry: the duty to notify counsel and the duty to respond" (id.; see People v Kadarko, 14 NY3d 426, 429 [2010]). "[W]hen a trial court paraphrases a jury note or omits a key term, thereby failing to provide counsel with meaningful notice of the precise content of a substantive juror inquiry, a mode of proceedings error occurs, and reversal is therefore required even in the absence of an objection" (People v Nealon, 26 NY3d 152, 157 [2015]; see People v Walston, 23 NY3d 986, 989 [2014]; People v Tabb, 13 NY3d 852, 853 [2009]; People v Kisoon, 8 NY3d 129, 135 [2007]). "'Although not every violation of CPL 310.30 is immune from normal preservation principles, a failure to apprise counsel about the specific contents of a substantive note from a deliberating jury violates the fundamental tenants of CPL 310.30 and qualifies as a mode of proceedings error,' which does not require preservation" (People v Cotton, 127 AD3d 778, 779 [2015], lv denied 25 NY3d 1200 [2015], quoting People v Silva, 24 NY3d 294, 299-300 [2014]).

With respect to Court exhibit Nos. 1 and 3, we find that, although County Court did not follow the precise procedure

---

says 'We've reached agreement on nine out of the ten charged.'" Although the handwriting is difficult to discern, it appears, based upon our review of exhibit No. 5, that the note actually stated "nine out of the ten charges," rather than "nine out of the ten charged."

outlined in People v O'Rama (supra) and its progeny, the court's particular deviations in handling these notes did not constitute mode of proceedings errors, and, thus, in the absence of any objection, the issues are unpreserved for our review (see People v Nealon, 26 NY3d at 158-162). However, with respect to Court exhibit No. 5, we conclude that County Court committed a mode of proceedings error for which no objection was necessary (see People v Lane, 134 AD3d 401, 402 [2015]). The court had an affirmative obligation to read exhibit No. 5 verbatim so that the parties had the opportunity to accurately analyze the jury's question and frame intelligent suggestions for the court's response (see People v Silva, 24 NY3d at 299; People v Kisoon, 8 NY3d at 134). The record is devoid of any information as to whether defendant knew about the portion of exhibit No. 5 stating "# 8G 4NG."[2] Although the parties requested that the court inquire as to whether the jury had reached a verdict and whether it was "complete," we cannot speculate as to what defendant knew about exhibit No. 5 (see People v Walston, 23 NY3d at 990). Furthermore, "we cannot assume that the omission was remedied at an off-the-record conference" (People v Smith, 133 AD3d 548, 549 [2015]). Accordingly, as County Court committed a mode of proceedings error as to exhibit No. 5, we must remit for a new trial on counts 1 through 9 of the consolidated indictment.

Lastly, we address defendant's challenges to County Court's Molineux and Sandoval rulings, as such issues may arise in the context of a new trial. As for defendant's Molineux challenge, County Court did not abuse its discretion in permitting evidence of defendant's uncharged drug crimes. Such evidence was relevant to establishing defendant's motive and intent, his overall scheme or plan and to provide necessary background information and was more probative than prejudicial (see People v Johnson, 106 AD3d 1272, 1274 [2013], lv denied 21 NY3d 1043 [2013]; People v Buchanan, 95 AD3d 1433, 1436 [2012], lv denied 22 NY3d 1039 [2013]; People v Lynch, 63 AD3d 959, 961 [2009]). As for defendant's challenge to County Court's Sandoval ruling, we note

_____

[2]    The ambiguity of the notation is also of concern to this Court.

that the court allowed the People to fully inquire into defendant's prior convictions for criminal impersonation and unauthorized use of a motor vehicle and limited the People's inquiry into defendant's prior convictions for resisting arrest and attempted reckless endangerment in the first degree by precluding any inquiry into the facts underlying those convictions.  Inasmuch as the prior crimes for which County Court permitted a full inquiry were not too remote in time, were dissimilar from the charged crimes and were probative of defendant's credibility and willingness to put his interests above that of the community, and given that County Court properly balanced the probative value of defendant's prior convictions against the risk of prejudice to defendant, we cannot say that County Court's Sandoval ruling constituted an abuse of discretion (see People v Sandoval, 34 NY2d 371, 376-378 [1974]; People v Buckley, 299 AD2d 417, 418 [2002], lv denied 99 NY2d 580 [2003]; People v Williams, 243 AD2d 833, 837 [1997], lv denied 91 NY2d 931 [1998]).

The balance of defendant's arguments do not require an extended discussion.  Defendant failed to preserve his argument that the People violated the Communications Act of 1934 and we decline to exercise our interest of justice jurisdiction with respect thereto.  Were we to review this claim, we would find it unavailing.  Defendant's remaining contentions are rendered academic by our decision.

Peters, P.J., Garry, Egan Jr. and Rose, JJ., concur.

ORDERED that the judgment is reversed, on the law, count 10 of the consolidated indictment dismissed, and the matter remitted to the County Court of Chenango County for a new trial on the remaining nine counts of the consolidated indictment.


ENTER:

Robert D. Mayberger
Clerk of the Court