■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEREMY WORTHINGTON, Appellant. [55 NYS3d 743]—

Lynch, J. Appeal from a judgment of the County Court of Chemung County (Hayden, J.), rendered April 4, 2014, upon a verdict convicting defendant of the crime of criminal possession of a weapon in the second degree (two counts).

Defendant was indicted on two counts of criminal possession of a weapon in the second degree following the seizure of two unloaded firearms from his automobile during a traffic stop. After a jury trial, he was convicted as charged. Prior to sentencing, defendant moved to set aside the verdict pursuant to CPL 330.30 (2) after discovering that there were handwritten notations on the back of a jury note pertaining to a previous weapons case. County Court denied the motion without a hearing and sentenced defendant to 3½ years in prison followed by 2½ years of postrelease supervision.[1] Defendant appeals.

We turn first to the challenged jury note, on which the jury foreperson informed County Court that the jury had "reached an agreement." The back of the note included handwritten comments apparently by a juror deliberating in a previous, unrelated weapons case. The People concede that the form had been recycled from a previous case.[2] Defendant maintains that he was denied a fair trial because the jury had access to writ-

---

1. The original sentence only included a two-year period of postrelease supervision but was subsequently modified to comply with the legal minimum for a class C felony conviction (*see* Penal Law §§ 70.02 [1] [b]; 70.45 [2] [f]).

2. County Court acknowledged receiving the note on the record and proceeded to directly take a verdict, without commenting on the written notations. In his affirmation supporting the motion for a new trial, defendant's counsel commented that the court observed different handwriting on both sides of the note, and that counsel were allowed to examine the note af-

ten materials, i.e., the notations on the back of the jury note, that were not expressly allowed under CPL 310.20—a violation that mandates a new trial. We are not persuaded.

Absent consent by the parties, CPL 310.20 expressly limits the materials that may be provided to a jury during deliberations to include any exhibits received in evidence, an annotated verdict sheet and, when requested, a written witness list. The Court of Appeals has held "that it is reversible error, not subject to harmless error analysis, to provide a jury in a criminal case with a verdict sheet that contains annotations not authorized by CPL 310.20 (2)" (*People v Miller*, 18 NY3d 704, 706 [2012]; *see People v Damiano*, 87 NY2d 477, 484-485 [1996]; *People v Spivey*, 81 NY2d 356, 361-362 [1993]). The basic principle is that "[n]othing of substance can be included that the statute does not authorize" (*People v Miller*, 18 NY3d at 706). The handwritten notations consist of short phrases and include comments about a gun, DNA and a pill bottle. In our view, the notations at issue do not constitute the type of materials or substantive instructions that trigger a strict application of CPL 310.20, particularly because there is nothing to show that either County Court or the People knew that the recycled note paper had been provided to the jury. Nor is there any indication that the jury was even aware of the notations.

Next, defendant maintains that the verdict is against the weight of the evidence since the evidence failed to establish that he knew the two guns were in his vehicle. Where, as here, a different verdict would not have been unreasonable, we "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Bleakley*, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]). "As relevant here, a person is guilty of criminal possession of a weapon in the second degree when he or she knowingly possesses any loaded firearm outside of his or her home or place of business" (*People v Scippio*, 144 AD3d 1184, 1185 [2016], *lv denied* 28 NY3d 1150 [2017], citing Penal Law § 265.03 [3]; *see* Penal Law § 15.00 [2]; *People v Saunders*, 85 NY2d 339, 341-342 [1995]). The weapon must be operable—which is not at issue here—and a "[l]oaded firearm" includes "any firearm which

ter the jury delivered its verdict. The court denied the motion on the record, observing that it was the first to notice the handwriting on the back of the note and, after looking into the matter, determined that the notations pertained to a trial two weeks earlier. From this record, we are unable to discern whether the court observed the notations or counsel was informed about the note discrepancy prior to the jury rendering its verdict and being discharged.

is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm" (Penal Law § 265.00 [15]). Possession may be actual or constructive (*see* Penal Law § 10.00 [8]). Constructive possession occurs where "a defendant exercised dominion and control over the place where [the weapon] was seized" (*People v Manini*, 79 NY2d 561, 572-573 [1992]; *see People v Victor*, 139 AD3d 1102, 1105 [2016], *lv denied* 28 NY3d 1076 [2016]). During a search of the vehicle, Richard Matthews, a Deputy Sheriff, found an unloaded Ruger semiautomatic pistol in the back pocket of the front passenger seat, as well as .22 caliber ammunition on the rear driver's side floor, around the driver's seat and in a small area next to the steering wheel. At that point, defendant advised Matthews that he recognized the gun, explained that there may also be a second weapon and that both must have been placed in the vehicle by his friend, Glen Woleslagle, the day before. Matthews then found a Taurus .22 caliber revolver located in the back pocket of the driver's seat. Matthews also located a locked safe in the trunk. After defendant provided the combination, Matthews found a sight for a weapon compatible with the Ruger.

Both defendant and Woleslagle testified that the two had gone fishing the day before the arrest at a family member's cabin. Woleslagle testified that he borrowed the two guns from a friend, and defendant acknowledged that they used the guns for target shooting. Woleslagle testified that, later that evening, unbeknownst to defendant, he put the guns in the seat pockets. They then returned to defendant's house where Woleslagle's girlfriend picked him up because he was intoxicated. The next morning, Woleslagle realized that the guns were left behind and tried, unsuccessfully, to reach defendant by phone in order to retrieve the weapons. For his part, defendant testified that he was unaware that Woleslagle had placed the guns back in the car. He explained that he had forgotten about the sight, which he intended to put on his son's crossbow. Relatedly, Matthews acknowledged that the Ruger had a common mounting system. Defendant also explained that he recovered loose rounds of ammunition on the ground and dropped them on the floor of his car or "the center console or little cubbyhole." He pointed out that the shells were corroded and may have been left outside by his children. Matthews noted that some of the ammunition was in fact corroded. While Woleslagle also testified that he put leftover ammunition on the floor or in the back seat pockets, he did not place any ammunition near the steering wheel.

Notably, the jury was not charged as to the automobile

presumption (*see* Penal Law § 265.15 [3]), but was presented with a case based on constructive possession—the key issue being whether defendant knew the guns were in his car. While defendant and Woleslagle explained a scenario that defendant did not realize that the weapons were still in his car when the traffic stop occurred, the jury's implicit finding that such testimony was not credible is entitled to deference and was not against the weight of the evidence (*see People v Carter*, 60 AD3d 1103, 1107 [2009], *lv denied* 12 NY3d 924 [2009]; *cf. People v Verez*, 83 NY2d 921, 924 [1994]; *People v Waters*, 30 AD3d 681, 682 [2006], *lv denied* 7 NY3d 796 [2006]).

Finally, defendant maintains that he was deprived of the effective assistance of counsel, focusing on counsel's failure to move to suppress the evidence obtained during the search of his vehicle. A defendant's constitutional right to effective representation is met "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (*People v Baldi*, 54 NY2d 137, 147 [1981]). The failure to request a suppression hearing does not necessarily constitute ineffective representation, but there are rare exceptions "where a defendant shows the absence of a strategic or legitimate explanation in counsel's strategy not to pursue a suppression motion" (*People v Zeh*, 144 AD3d 1395, 1396 [2016]).

Defendant maintains that the length of the detention following the traffic stop was unjustified and that his eventual consent to the search of his vehicle was tainted by his unlawful detention. On this theory, defendant maintains that a suppression motion would have been successful, and the weapons suppressed—necessitating dismissal of the indictment. We disagree. We recognize that "[a] traffic stop constitutes a limited seizure of the person . . . [and,] to pass constitutional muster, the officer's action in stopping the vehicle must be justified at its inception and the seizure must be reasonably related in scope, including its length, to the circumstances which justified the detention in the first instance" (*People v Banks*, 85 NY2d 558, 562 [1995] [citation omitted], *cert denied* 516 US 868 [1995]).

Matthews testified that he initiated the routine traffic stop after observing an obstruction in defendant's windshield, later determined to be a mountable cell phone holder. Defendant was driving and there was a female in the front passenger seat, with two dogs in the back. Upon request, defendant gave Matthews an insurance card and a registration for the vehicle,

which had a Pennsylvania license plate, but was unable to produce a driver's license or other form of identification. The insurance and registration documents matched the vehicle. Defendant did produce a traffic citation issued the day before in New York that provided his name, date of birth and driver's license number. Upon further inquiry, defendant explained that he was returning home to Pennsylvania, but was unable to provide the passenger's name or address, and he gave conflicting stories about losing one of the dogs and where he stayed the night before. Matthews asked defendant to step out of the car and, upon further questioning, defendant informed him that the passenger's first name was Miranda, that they had just met and that "she was just going with him down to Pennsylvania." At Matthews' request, defendant emptied his pockets and consented to a search of his vehicle. After the passenger stepped out of the vehicle, Matthews found a pipe typically used to smoke narcotics in the area where she had been sitting. The search continued and he recovered the weapons.

While the predicate for the initial stop—which defendant does not challenge in his brief—would warrant only a limited detention, defendant's failure to produce a license or other form of identification and his inability to identify his passenger, coupled with an inconsistent explanation as to his activities, provided a reasonable suspicion of criminality that justified Matthews' continued questioning up to the point when defendant consented to the search of his vehicle (*see People v Banks*, 148 AD3d 1359, 1362 [2017]; *People v Carter*, 60 AD3d at 1104-1105). As such, it is our view that a suppression motion would not have been successful—an outcome that undermines defendant's ineffective assistance argument (*see People v Caban*, 5 NY3d 143, 152 [2005]). We also note the People's observation that, early in the case, defendant failed to appear and a warrant was issued for his arrest. After being incarcerated in Pennsylvania for several months, defendant returned to New York. Thereafter, defendant waived a *Huntley* hearing in the hopes of keeping open a beneficial plea offer—a strategy that may have contributed to counsel's failure to request a *Mapp* hearing. Based on the totality of the record, in which counsel mounted a consistent, cogent defense that defendant was not aware that the weapons were in the vehicle, we find that defendant received meaningful representation.

McCarthy, J.P., Egan Jr., Devine and Clark, JJ., concur. Ordered that the judgment is affirmed.