People v Jemmott (2018 NY Slip Op 05632)





People v Jemmott


2018 NY Slip Op 05632


Decided on August 2, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 2, 2018

108347

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
MALCOLM Q. JEMMOTT, Appellant.

Calendar Date: May 30, 2018

Before: Egan Jr., J.P., Lynch, Mulvey, Aarons and Pritzker, JJ.


John Ferrara, Monticello, for appellant.
D. Holley Carnright, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.



MEMORANDUM AND ORDER
Lynch, J.
Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered February 27, 2015, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree (two counts).
The facts underlying this case are set forth in detail in our prior decision that partially granted defendant's motion to suppress certain evidence, vacated the judgment entered upon defendant's plea and remitted the matter for further proceedings (116 AD3d 1244 [2014]). Following a jury trial, defendant was convicted of criminal possession of a weapon in the second degree and two counts of criminal possession of a weapon in the third degree. He was sentenced, as a second felony offender, to an aggregate prison term of 15 years, followed by five years of postrelease supervision. Defendant now appeals.
Initially, defendant maintains that County Court erred, upon remittal, in failing to suppress — and therefore allowing into evidence — photographs of a gun, which were retrieved during the search of his cell phone pursuant to a warrant issued by City Court. We agree. At issue is whether the warrant application provided probable cause for the issuance of the warrant. To establish probable cause, a warrant application must include "information sufficient to support a reasonable belief that . . . evidence of a crime may be found in a certain place" (People v Bigelow, 66 NY2d 417, 423 [1985]; see People v Alberts, 161 AD3d 1298, 1304 [2018], lv [*2]denied ___ NY3d ___ [June 29, 2018]; People v Vanness, 106 AD3d 1265, 1266 [2013], lv denied 22 NY3d 1044 [2013]). A presumption of validity attaches to a search warrant signed by a magistrate (see People v Brooks, 152 AD3d 1084, 1086 [2017]; People v Vanness, 106 AD3d at 1266), and a court's determination that there is a probable cause for a search warrant "must be afforded great deference" (People v Anderson, 149 AD3d 1407, 1408 [2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 947 [2017]).
The warrant at issue was based on the affidavit of City of Kingston Police Detective Eric Van Allen, which briefly discussed the underlying incident and detailed his knowledge of certain gang activity in the area where defendant was arrested. After critiquing the application and severing various paragraphs as unreliable under the Aguilar-Spinelli test, County Court essentially reasoned that, as a matter of "common sense and every day experience," the application was sufficient to support the reasonable belief that photographic evidence of the gun could be found on the phone. The flaw in this reasoning is that common sense alone does not establish probable cause to search a person's cell phone. Recent decisions of the Supreme Court of the United States have emphasized the significant privacy interest that an individual has in the information stored in his or her cell phone (see Carpenter v United States, ___ US ___, ___, 138 S Ct 2206, 2217 [2018]; Riley v California, ___ US ___, ___, 134 S Ct 2473, 2485 [2014]). Here, because the allegations remaining after County Court struck those that were unreliable did not indicate that a search of defendant's cell phone would yield evidence that a crime had occurred, was occurring or was about to occur (see People v Mercado, 68 NY2d 874, 876 [1986], cert denied 479 US 1095 [1987]), the warrant application did not provide a reasonable factual basis for the issuance of the warrant (see People v Moxley, 137 AD3d 1655, 1656 [2016]). That said, the photographs do not reveal any identifying features establishing that the gun depicted in the photographs was the same gun seized from the vehicle. Given the overwhelming proof linking defendant to the gun seized from the vehicle, as outlined below, "there is no reasonable possibility that the [admission of photographs] might have contributed to defendant's conviction and [the error] was thus harmless beyond a reasonable doubt" (People v Crimmins, 36 NY2d 230, 237 [1975]; cf. People v Hoyle, 211 AD2d 973, 974 [1995], lv denied 86 NY2d 736 [1995]).
Next, defendant contends that the verdict was against the weight of the evidence. To resolve such a claim, we "first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Yedinak, 157 AD3d 1052, 1055 [2018] [internal quotation marks and citations omitted]; see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Worthington, 150 AD3d 1399, 1400 [2017], lv denied 29 NY3d 1095 [2017]). "This analysis entails viewing the evidence in a neutral light and giving deference to the jury's credibility assessments" (People v Kiah, 156 AD3d 1054, 1055 [2017] [internal quotation marks and citations omitted], lvs denied 31 NY3d 981, 984 [2018]).
Relevant here, a person is guilty of criminal possession of a weapon in the second degree when he or she "possesses any loaded firearm" (Penal Law § 265.03 [3]). A loaded firearm is defined as "any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm" (Penal Law § 265.00 [15]). A person is guilty of criminal possession of a weapon in the third degree when he or she knowingly possesses any firearm and he or she has been [*3]previously convicted of any crime or where he or she possesses a defaced firearm (see Penal Law §§ 265.01, 265.02 [1], [3]). Criminal possession may be established through either actual possession or constructive possession, with the latter requiring proof that the defendant "exercised dominion and control over the contraband or the area where the contraband was found" (People v Perry, 116 AD3d 1253, 1254 [2014] [internal quotation marks and citations omitted]; see People v Graham, 138 AD3d 1242, 1242 [2016], lv denied 28 NY3d 930 [2016]).
At trial, Frederick Norfleet testified that he was outside of his house when he saw his girlfriend get into the passenger seat of a green minivan and then watched as the minivan drove away. Approximately five minutes later, the minivan returned and the girlfriend got out and went inside of the house. Norfleet testified that, shortly thereafter, a "guy" — later identified as defendant — walked up and said he was looking for someone. Norfleet did not know who defendant was talking about and defendant responded, "well if you did you better let her know that I am going to air this . . . out," which Norfleet interpreted to mean that defendant would "shoot the place up." Defendant began to walk away, but when Norfleet's girlfriend came back outside, defendant turned back, grabbed her, pushed her up against the fence and held a gun against her head. Norfleet described the gun as a black automatic weapon. Defendant left after Norfleet gave him money.
Van Allen testified that Norfleet's girlfriend flagged him down as he was driving through the neighborhood. She was crying and upset and pointed to defendant, who was down the street, and said "that's the guy." Van Allen followed defendant before stopping him and conducting a pat-down search, which yielded a wallet containing two identification cards — one bearing defendant's name — a cell phone and a car key. While defendant was in custody, Van Allen returned to speak with Norfleet and his girlfriend and, after learning of the minivan, found the minivan near the area where he first stopped defendant. When Van Allen looked inside of the minivan, he saw an open backpack on the backseat and the butt of a gun sticking out from the backpack. Using the car key that he had seized from defendant, he opened the minivan and discovered in the backpack numerous documents bearing defendant's name and a .40 caliber Glock model 23, with two magazines, 20 bullets and a holster. Van Allen testified that the gun was loaded. Two other police officers testified that the gun was tested and confirmed that the gun was, in fact, loaded and fully operable. Another witness — a forensic scientist — testified that the gun was defaced with scratches to cover and to remove the serial number. Defendant presented testimony by a forensic scientist who confirmed that defendant's DNA was not found on the side of the gun and that her comparison with other parts of the minivan and gun was otherwise inconclusive.
Given this testimony, we conclude that a different verdict would not have been unreasonable. We do not, however, find that the verdict was against the weight of the evidence. Contrary to defendant's argument, a finding of exclusive access to the area where a weapon is found is not necessary to establish constructive possession (see People v Victor, 139 AD3d 1102, 1105 [2016], lv denied 28 NY3d 1076 [2016]; People v Pinkney, 90 AD3d 1313, 1314-1315 [2011]), and constructive possession may be established through circumstantial evidence (see People v Perry, 116 AD3d at 1254). Insofar as defendant claims Norfleet was not credible, this was explored during cross-examination and was a matter for the jury's consideration (see People v Criss, 151 AD3d 1275, 1279 [2017], lv denied 30 NY3d 979 [2017]; People v Worthington, 150 AD3d at 1400).
Defendant also argues that County Court should have allowed his attorney to cross-[*4]examine Van Allen about a purported prior arrest. Despite the People's application, County Court declined to issue an order precluding any such questioning, but advised that the issue would be "re-visited" if counsel could establish a good faith basis. At trial, defendant's counsel cross-examined Van Allen, but never sought to ask about the purported investigation. Accordingly, this claim is of no moment (see People v George, 67 NY2d 817, 818-819 [1986]). Similarly, because trial counsel agreed with the court that the circumstantial evidence charge was not necessary, this challenge is not preserved for our review.
Finally, we do not find that defendant's sentence, though the statutory maximum, was harsh or excessive. Under the circumstances of this case, we find no abuse of discretion or extraordinary circumstances to warrant a reduction of the sentence in the interest of justice (see People v Major, 143 AD3d 1155, 1160 [2016], lv denied 28 NY3d 1147 [2017]; People v Fairley, 63 AD3d 1288, 1290 [2009], lv denied 13 NY3d 743 [2009]). Defendant's claim that he received a longer sentence because he exercised his constitutional right to trial is not preserved for our review (see People v Hurley, 75 NY2d 887, 888 [1990]; People v Watson, 150 AD3d 1384, 1387 [2017], lv denied 29 NY3d 1135 [2017]). If we were to consider this claim, which defendant supports by comparing the sentence that was offered with the sentence received after trial, we would find it to be without merit (see People v Pena, 50 NY2d 400, 411-412 [1980], cert denied 449 US 1087 [1981]).
Egan Jr., J.P., Mulvey, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.