People v Rawlinson (2019 NY Slip Op 02387)





People v Rawlinson


2019 NY Slip Op 02387


Decided on March 28, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 28, 2019

108187

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
TERRENCE RAWLINSON, Appellant.

Calendar Date: February 14, 2019

Before: Clark, J.P., Mulvey, Aarons, Rumsey and Pritzker, JJ.


Henry C. Meier, Delmar, for appellant, and appellant
pro se.
P. David Soares, District Attorney, Albany (Christopher D. Horn of counsel), for respondent.



MEMORANDUM AND ORDER
Clark, J.P.
Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered January 7, 2016, upon a verdict convicting defendant of the crimes of attempted assault in the first degree and criminal possession of a weapon in the second degree.
On the evening of January 11, 2015, police responded to a 911 call reporting that gunshots had been fired in the direction of a residence in the Town of Colonie, Albany County and that the 911 caller was following the vehicle in which the suspected perpetrator was an occupant. The police subsequently initiated a felony traffic stop of the vehicle identified by the 911 caller and, after all four occupants exited, a loaded .38 caliber pistol was recovered from the floor beneath the right rear passenger seat where defendant had been sitting. Defendant was subsequently charged with attempted murder in the second degree, attempted assault in the first degree, criminal possession of a weapon in the second degree and two counts of endangering the welfare of a child. Following a jury trial, defendant was convicted of attempted assault in the first degree and criminal possession of a weapon in the second degree, but acquitted of the remaining charges. Defendant was sentenced to two concurrent prison terms of 13 years, followed by five years of postrelease supervision. Defendant now appeals, and we affirm.
Contrary to defendant's contention, the jury verdict is not against the weight of the evidence. As relevant here, a conviction for attempted assault in the first degree requires proof that, "[w]ith intent to cause serious physical injury to another person," the defendant attempted to cause "such injury
. . . by means of a deadly weapon" (Penal Law §§ 110.00, 120.10 [1]; see People v Harwood, 139 AD3d 1186, 1187 [2016], lv denied 28 NY3d 1028 [2016]). A conviction for criminal possession of a weapon in the second degree requires proof that the defendant knowingly possessed a loaded and operable firearm outside of his or her home or place of business (see Penal Law § 265.03 [3]; People v Worthington, 150 AD3d 1399, 1400 [2017], lv denied 29 [*2]NY3d 1095 [2017]; CJI2d[NY] Penal Law § 265.03 [3]). A defendant's possession of the firearm may be actual or constructive, with the latter requiring proof that the defendant exercised dominion and control over the contraband by a sufficient level of control over the area in which it was found or over the person from whom it was seized (see Penal Law § 10.00 [8]; People v Manini, 79 NY2d 561, 573 [1992]). Further, subject to certain exceptions not applicable here, "[t]he presence in an automobile . . . of any firearm . . . is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon . . . is found" (Penal Law § 265.15 [3]; accord People v Oliver, 135 AD3d 1188, 1190 [2016], lv denied 27 NY3d 1003 [2016]).
The trial evidence established that the victim and defendant's father had gotten into a physical altercation several hours prior to the shooting, and defendant testified that he traveled to the area from his home in Pennsylvania after learning of the fight. The victim and the victim's wife both testified that, on the evening after the fight, the victim and two others were on the victim's porch when two individuals — one of whom they identified as defendant — approached their home with a large dog [FN1]. The victim stated that, after an exchange of words, defendant fired several shots in his direction and then fled. The victim's wife stated that, although she had seen the individuals approach, she was in the basement when she heard the gunshots and she immediately ran upstairs to see what happened and then called 911 as she jumped into her car to pursue the shooter. Testimony from several police officers established that the vehicle identified by the victim's wife was thereafter stopped, that the occupants were removed from the vehicle and that a handgun was recovered from the right rear passenger floor, where defendant had been sitting. The evidence further demonstrated that a projectile was recovered from inside the victim's home, that the recovered handgun contained one live bullet and four spent casings, that the handgun was test-fired and determined to be operable and that forensic testing yielded a partial DNA profile that was insufficient for comparison purposes. As established by police testimony and an audio recording of one of defendant's police interviews, defendant confessed to owning the handgun — about which he demonstrated considerable knowledge — and firing the gun in the victim's direction.
Defendant testified on his own behalf and stated that he had falsely confessed as a result of pressure from the other three occupants of the vehicle, one of whom he allegedly owed for previously taking the blame for a crime that he had committed. Additionally, in conflict with his statement to police, defendant asserted at trial that he and five others had traveled to the victim's house in two vehicles, that he was in the second vehicle to arrive at the residence and that, as he was approaching the victim's home, he saw one of the occupants from the first vehicle fire several gunshots in the direction of the victim. He testified that the gun belonged to one of his companions and posited that, after he exited the stopped vehicle at the direction of police, his companion must have placed the gun on the right rear passenger floor. Given defendant's testimony, as well as the absence of any forensic evidence recovered from the firearm, it would not have been unreasonable for the jury to have credited defendant's version of events and acquitted him of all charges (see People v Martinez, 166 AD3d 1292, 1294-1295 [2018], lv denied ___ NY3d ___ [Feb. 25, 2019]). However, when we view the evidence in a neutral light and accord deference to the jury's credibility determinations, we conclude that the jury's verdict — which necessarily included findings that defendant fired several shots in the direction of the victim with the intent of causing him serious physical injury and that defendant knowingly possessed the firearm at the time of the felony traffic stop [FN2] — is supported by the weight of the evidence (see People v Worthington, 150 AD3d at 1401-1402; People v Lanier, 130 AD3d 1310, 1311 [2015], lv denied 26 NY3d 1009 [2015]; People v Portee, 56 AD3d 947, 949-950 [2008], [*3]lvs denied 12 NY3d 820 [2009]; People v Young, 51 AD3d 1055, 1056 [2008], lv denied 11 NY3d 796 [2008]).
We also reject defendant's assertion that the People failed to provide notice of their intention to offer testimony from the victim regarding an out-of-court identification of defendant, as required by CPL 710.30. Pursuant to CPL 710.30, "[w]henever the [P]eople intend to offer at a trial . . . testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him or her . . ., they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered." We initially observe that the alleged identification testimony was not elicited during the People's direct examination. Rather, the victim testified on cross-examination that he drove to the scene of the felony traffic stop, that he observed the scene from his car and that, sometime thereafter, while at the police station, he gave a statement indicating that the shooter had been the last person to exit the stopped vehicle. The victim further testified that the police did not show him any photographs or ask him to identify the shooter in a lineup. Under these circumstances, the notice requirement of CPL 710.30 was not triggered and, thus, there can be no violation (see People v Berkowitz, 50 NY2d 333, 338 n 1 [1980]; People v Coker, 121 AD3d 1305, 1307 [2014], lv denied 26 NY3d 927 [2015]; People v Bailey, 259 AD2d 779, 780 [1999]).
Defendant also takes issue with County Court's response to a jury note, which stated: "Read law on weapon possession." In fulfilling its statutory obligation to respond to a jury note (see CPL 310.30), the trial court is vested with discretion in determining the substance of its response, guided by the requirement that such response be meaningful (see People v Santi, 3 NY3d 234, 248 [2004]; People v Malloy, 55 NY2d 296, 301-302 [1982], cert denied 459 US 847 [1982]; People v Briskin, 125 AD3d 1113, 1121 [2015], lv denied 25 NY3d 1069 [2015]). Here, after receiving the jury note, County Court proposed to the People and defendant that it "read the entire instruction, including physical and constructive possession[,] . . . the CJI instruction for criminal possession of a weapon in the second degree [and] . . . the presumption of possession from presence of weapon in automobile." Defendant objected to County Court's proposal, arguing that the jury did not ask for the constructive possession charge or the automobile presumption charge. The prosecutor, in turn, argued for the inclusion of these charges. Over defendant's objection, the court ultimately read the instruction for criminal possession of a weapon in the second degree, as well as the constructive possession charge, and advised the jury that "if [it] want[ed] any additional instruction then [it would] have to send . . . another note requesting that." In our view, County Court provided an appropriate and meaningful response to the jury's inquiry, thereby satisfying its statutory obligation (see CPL 310.30; People v Stokes, 141 AD3d 1032, 1034 [2016], lv denied 28 NY3d 1075 [2016]; People v Acevedo, 118 AD3d 1103, 1107-1108 [2014], lv denied 26 NY3d 925 [2015]).
Defendant further contends that he received ineffective assistance of counsel. Several of defendant's criticisms of trial counsel, including his challenge to the adequacy of defense counsel's pretrial investigation and preparation, involve matters that are outside of the record and, thus, are more appropriately addressed in a CPL article 440 motion (see People v Vickers, 156 AD3d 1236, 1238 [2017], lvs denied 31 NY3d 980, 988 [2018]; People v Cade, 110 AD3d 1238, 1241 [2013], lv denied 22 NY3d 1155 [2014]). "As to the balance of defendant's claim, the constitutional right to the effective assistance of counsel does not mean that the representation was error free in every respect, but simply that defendant was afforded a fair trial" (People v Cade, 110 AD3d at 1241 [internal quotations marks, brackets and citations omitted]; see People v Fulwood, 86 AD3d 809, 811 [2011], lv denied 17 NY3d 952 [2011]). Here, through cogent opening and closing statements and effective direct and cross-examinations, defense counsel pursued a reasonable trial strategy aimed at cultivating reasonable doubt with respect to the identity of the shooter, the issues of intent and constructive possession and defendant's knowledge as to the presence of children in the victim's home. With this strategy, defendant was acquitted of the top charge of attempted murder in the second degree, as well as the two counts of endangering the welfare of a child. Considered as a whole, the record reveals that defendant [*4]received meaningful representation (see People v Vickers, 156 AD3d at 1238-1239; People v Malcolm, 74 AD3d 1483, 1487 [2010], lv denied 15 NY3d 954 [2010]).
Finally, we disagree with defendant's assertion that the sentence imposed upon him was harsh and excessive. In rendering defendant's sentence, County Court properly considered "the serious facts and circumstances" giving rise to the convictions, as well as defendant's history with the criminal justice system and failure to accept responsibility for his actions. Inasmuch as County Court did not abuse its discretion and we discern no extraordinary circumstances that would warrant a modification of defendant's sentence, there is no basis upon which to reduce the sentence in the interest of justice (see People v Nelson, 128 AD3d 1225, 1228 [2015], lv denied 26 NY3d 1041 [2015]; People v Lozada, 35 AD3d 969, 971 [2006], lv denied 8 NY3d 947 [2007]). As for defendant's remaining contentions, we have reviewed them and found them to be without merit.
Mulvey, Aarons, Rumsey and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The victim and the victim's wife testified that, at the time of the shooting, their two children were inside the residence on the second floor.

Footnote 2: With respect to the charge of criminal possession of a weapon in the second degree, the indictment charged defendant with possessing the firearm while in the particular area where the traffic stop occurred, rather than possessing the firearm at the victim's home. Thus, it was not, as defendant contends, inconsistent for the People to present a constructive possession case while also asserting that defendant was the shooter.