People v Callahan (2020 NY Slip Op 04618)





People v Callahan


2020 NY Slip Op 04618


Decided on August 20,2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 20,2020

110027

[*1]The People of the State of New York, Respondent,
v
Casey J. Callahan, Appellant.

Calendar Date: June 10, 2020

Before: Garry, P.J., Clark, Mulvey, Aarons and Colangelo, JJ.


Rural Law Center of New York, Castleton (Kelly L. Egan of counsel), for appellant.
John M. Muehl, District Attorney, Cooperstown (Michael F. Getman of counsel), for respondent.



Aarons, J.
Appeal from a judgment of the County Court of Otsego County (Lambert, J.), rendered October 30, 2017, upon a verdict convicting defendant of the crime of murder in the second degree.
In 2000, defendant, a truck driver, and his wife (hereinafter the victim) stopped at a truck stop allegedly because the victim had to use the restroom. The truck stop was located in Pennsylvania just shy of the New York border. After the victim exited the cab, defendant slowly moved the truck, and she was fatally run over by it. It was not until 2016 that defendant was charged by indictment with murder in the second degree as a result of the victim's death. A jury trial was held in 2017, after which defendant was convicted as charged and sentenced to a term of imprisonment. Defendant appeals. We reverse.
Defendant argues that the evidence was not legally sufficient to support the conviction. This argument, however, is unpreserved. Although defendant made a specific motion to dismiss after the People rested, he failed to renew it upon the close of all proof (see People v Sloley, 179 AD3d 1308, 1309 n 2 [2020], lv denied 35 NY3d 974 [2020]; People v Hilton, 166 AD3d 1316, 1317 [2018], lv denied 32 NY3d 1205 [2019]).
Nevertheless, defendant also argues that the verdict was against the weight of the evidence, an argument not subject to preservation requirements (see People v Meadows, 180 AD3d 1244, 1245 [2020], lv denied 35 NY3d 994 [2020]; People v Gabriel, 155 AD3d 1438, 1439 [2017], lv denied 31 NY3d 1081 [2018]). We first determine whether a contrary result would not have been unreasonable; if so, we act like the trier of fact and "weigh the probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Gabriel, 155 AD3d at 1439; see People v Magnuson, 177 AD3d 1089, 1091 [2019]; People v Richardson, 167 AD3d 1064, 1066 [2018]; People v Martinez, 166 AD3d 1292, 1293 [2018], lv denied 32 NY3d 1207 [2019]). "Based on the weight of the credible evidence, [we] then decide[] whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 348 [2007]).
The record reflects that defendant had dropped off a shipment and was then dispatched to retrieve another shipment that happened to require him to pass through the direction of his home in Otsego County. The victim was surprised by defendant's unscheduled stop but, upon his request, she agreed to accompany him on this new work trip. During the trip, they stopped at a truck stop in Pennsylvania that was close to the New York border. Two drivers who were at the truck stop observed the victim alight from the truck and then bend down to tie her shoes. These witnesses further testified that, shortly after the victim stepped out, the truck started to slowly move forward and that she was run over by it.
The People adduced testimony from a witness that defendant told him that he wanted to know what it felt like to kill someone. The People also adduced evidence that, prior to the victim's death, defendant made statements to the effect that he could run over someone with his truck and make it look like an accident. In one statement, defendant even identified a truck stop in Pennsylvania near the border to New York where the local authorities would likely declare such an incident to be accidental. There was also evidence that defendant and the victim had a rocky marital relationship, that the victim was contemplating how to get out of the marriage and that defendant displayed little emotion when discussing the victim's death. Meanwhile, defendant testified on his own behalf and maintained that the victim's death was an accident and that he was merely joking when he told other people that he could run a person over with his truck and make it seem like an accident. One witness to whom defendant made these statements stated that he forgot that defendant had even said such statements and did not even recall the conversation in which they were made until at least two months after the victim's death. In addition, an insurance investigator and a Pennsylvania law enforcement investigator concluded that the victim's death was an accident.
As to the issue of intent, in view of defendant's testimony that the victim's death was an accident, a different result would not have been unreasonable. Nevertheless, viewing the trial evidence in a neutral light — particularly the striking similarities between defendant's statements and the circumstances of the victim's death — the jury could infer that defendant intentionally killed the victim (see People v Lebron, 166 AD3d 1069, 1074 [2018], lv denied 32 NY3d 1174 [2019]). Furthermore, the jury apparently rejected defendant's testimony, as well as the evidence supporting his claim that the victim's death was accidental. Given that "[t]he intent to kill may be inferred from the surrounding circumstances and a defendant's actions" (People v Croley, 163 AD3d 1056, 1056 [2018] [internal quotation marks, brackets and citations omitted]), and deferring to the jury's credibility assessments, we reject defendant's assertion that the weight of the evidence failed to show that he possessed the requisite intent to kill the victim (see People v Lee, 183 AD3d 1183, 1187-1188 [2020]; People v Wlasiuk, 136 AD3d 1101, 1102-1103 [2016], lv denied 27 NY3d 1009 [2016]; People v Stewart, 68 AD3d 1438, 1439-1440 [2009], lv denied 14 NY3d 773 [2010]).
As to the jurisdictional issue raised by defendant, "[t]he general rule in New York is that, for the [s]tate to have criminal jurisdiction, either the alleged conduct or some consequence of it must have occurred within the [s]tate" (People v McLaughlin, 80 NY2d 466, 471 [1992]; see CPL 20.20 [1] [a]). In view of defendant's statements, the evidence that defendant picked up the victim in Otsego County after having learned that his new work assignment would take him through there and then past a Pennsylvania truck stop just over the New York border, and the circumstances surrounding the victim's death, the jury correctly concluded that the People established beyond a reasonable doubt that defendant's "conduct in New York . . . manifested [his] intent to commit the crime" and, thus, that territorial jurisdiction existed (People v Kassebaum, 95 NY2d 611, 619 [2001], cert denied 532 US 1069 [2001]).
Defendant also challenges certain testimony by the victim's niece as being beyond the scope of County Court's Molineux ruling. As part of its Molineux application, the People requested that they be allowed to offer proof about instances of verbal and emotional abuse by defendant toward the victim. The court granted the application and permitted the People to elicit such evidence. At trial, however, the niece testified that the victim told her that defendant once grabbed her arm in a store because he did not like who she was talking to and that bruises on her legs were caused by defendant. The niece further testified that she observed defendant kick the victim in the stomach. That said, incidents of physical abuse by defendant were not part of the People's Molineux application. As such, the niece's testimony, some of which was hearsay, exceeded the scope of the court's Molineux ruling and deprived defendant of a fair trial (see People v Badillo, 218 AD2d 811, 813 [1995]).[FN1]
Because the evidence of defendant's guilt was not overwhelming, there must be a new trial (see generally People v Crimmins, 36 NY2d 230, 241 [1975]). We note that defendant did not object to the niece's testimony and, consequently, failed to preserve this argument (see People v Echavarria, 53 AD3d 859, 863 [2008], lv denied 11 NY3d 832 [2008]). Despite this infirmity, we deem it appropriate under the particular circumstances of this case to exercise our interest of justice jurisdiction and reverse the judgment (see CPL 470.15 [6] [a]). Based upon our determination herein, defendant's remaining assertions are academic.
Garry, P.J., Clark, Mulvey and Colangelo, JJ., concur.
ORDERED that the judgment is reversed, as a matter of discretion in the interest of justice, and matter remitted to the County Court of Otsego County for a new trial.



Footnotes

Footnote 1: County Court did give an instruction that the jury was not to consider the Molineux evidence as propensity evidence. Such instruction, however, was specifically tailored to the pattern of emotional abuse by defendant. It did not refer to instances of physical abuse and, therefore, did not ameliorate the harm to defendant.