People v Velett (2022 NY Slip Op 03148)

People v Velett

2022 NY Slip Op 03148

Decided on May 12, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 12, 2022

110900
[*1]The People of the State of New York, Respondent,
v
Robert J. Velett, Appellant.

Calendar Date:March 21, 2022

Before:Garry, P.J., Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Rural Law Center of New York, Castleton (Keith F. Schockmel of counsel), for appellant.
Amanda M. Nellis, Acting District Attorney, Johnstown, for respondent.

Pritzker, J.
Appeal from a judgment of the County Court of Fulton County (Hoye, J.), rendered October 12, 2018, upon a verdict convicting defendant of the crimes of sexual abuse in the first degree and endangering the welfare of a child.
Defendant was convicted, following a jury trial, of sexual abuse in the first degree and endangering the welfare of a child based upon allegations that he subjected the victim, a seven year old, to sexual contact.[FN1] Defendant was sentenced, as a second child sexual assault felony offender, to a prison term of 15 years, followed by 20 years of postrelease supervision, for the conviction of sexual abuse in the first degree and to a lesser concurrent term of incarceration on the other conviction. Defendant appeals.
Defendant's contention that the verdict as to his conviction for sexual abuse in the first degree was not supported by legally sufficient evidence is not preserved for this Court's review as defendant's general motion to dismiss at trial was not specifically directed at the challenges he raises on appeal (see People v Baber, 182 AD3d 794, 795 [2020], lv denied 35 NY3d 1064 [2020]). "Nevertheless, in reviewing whether the verdict is against the weight of the evidence, this Court necessarily must ensure that the People proved each element of the crime beyond a reasonable doubt" (People v Hajratalli, 200 AD3d 1332, 1333 [2021] [internal quotation marks and citations omitted]). As is relevant here, a defendant may be convicted of sexual abuse in the first degree "when he or she subjects another person to sexual contact . . . [w]hen the other person is less than eleven years old" (Penal Law § 130.65 [3]).
The proof at trial reflects that defendant was babysitting the victim, and for a time his younger brother, at defendant's apartment when the incident occurred. The victim, who gave unsworn testimony,[FN2] stated that he remembered being on defendant's bed without clothes on and that defendant touched the victim's butt with his hands and the victim's penis with his mouth. The victim testified that he was in the bathroom getting dressed, at defendant's direction, when the victim's mother came to the apartment. The victim further explained that, when the mother's boyfriend came to the apartment, the victim was in the living room on a stool playing a video game while "[defendant] was doing the same thing that he did over again," but the victim did not disclose what defendant was specifically doing. The mother testified that, when she went to check on the victim and his brother, she knocked on defendant's door for approximately 10 minutes before entering the apartment and, when she did, she saw the victim coming out of defendant's bathroom where he appeared to be getting dressed. The mother left the victim with defendant to finish using the bathroom and went to her apartment, where she called the boyfriend to ask him to come home because she thought that something was wrong. The boyfriend testified that when he went [*2]to defendant's apartment, he found the victim naked, sitting on a stool playing a video game. When he asked defendant why the victim was naked, defendant avoided the question. The mother testified that when the victim came home, he curled up on the couch and would not tell her what happened. Thereafter, at the direction of a police officer, the mother took the victim to a nearby medical facility for an examination.
Both a physician assistant and a registered nurse who conducted the sexual assault kit on the victim testified regarding their collection of evidence from the victim. The physician assistant testified that the victim stated that defendant had "played with my wiener and put his finger in my butt." The registered nurse testified to the victim relaying the same information. A forensic scientist who tested the evidence from the sexual assault kit testified that she identified six spermatozoa on a penile smear and prostate specific antigen on the anal swabs, but neither spermatozoa nor prostate specific antigen on the perianal swabs. A DNA analyst tested penile, perianal, anal and buccal swabs from the sexual assault kit and found, among other things, a DNA profile consistent with two donors on the anal swabs — the first being the victim's and the second profile being not suitable for comparison. From the perianal swabs the DNA analyst found that there was DNA from at least two donors, one of which was male, and defendant was identified as a "possible contributor" to that profile.
An officer with the Gloversville Police Department testified that on his way to the victim's home on the day of the incident, defendant stopped him and told him that "he was being accused of something that he did not . . . do" and that "he didn't do anything illegal to the [victim]." A detective with the Gloversville Police Department testified that she interviewed defendant,[FN3] who had been visiting the police station every day attempting to speak with someone familiar with the victim's accusations. Defendant agreed to submit to a buccal swab. Defendant stated that the victim came to play video games and that, when the victim had come back from the bathroom, defendant noticed his shorts were on backwards, so he instructed the victim to readjust them in the bathroom and did not realize that he came out naked. Defendant denied having had sex with the victim.
Although a different verdict would not have been unreasonable, the evidence presented at trial established the elements of sexual abuse in the first degree beyond a reasonable doubt. Contrary to defendant's contention, the victim's unsworn testimony, during which he would not provide detailed descriptions about what happened, was sufficiently corroborated by not only testimony provided by the mother and the boyfriend, but also by the presence of DNA on the victim, of which defendant was a possible contributor, as well as the testimony of the physician assistant and the registered nurse who conducted [*3]the sexual assault kit (see People v Groff, 71 NY2d 101, 104 [1987]; People v Kidwell, 88 AD3d 1060, 1062 [2011]). We are similarly unpersuaded that inconsistencies in certain witnesses' testimony negate the weight of the evidence supporting the verdict. All of these witnesses were thoroughly cross-examined and "any aspect of their testimony that could have been perceived as inconsistent . . . was fully explored and presented to the jury, which was entitled to credit their testimony" (People v Thiel, 134 AD3d 1237, 1239 [2015], lv denied 27 NY3d 1156 [2016]; see People v Santana, 179 AD3d 1299, 1301 [2020], lv denied 35 NY3d 973 [2020]). "[W]hen we view the evidence in a neutral light and defer to the jury's credibility determinations, we find that the verdict is supported by the weight of the evidence" (People v Santana, 179 AD3d at 1301; see People v Fournier, 137 AD3d 1318, 1320 [2016], lv denied 28 NY3d 929 [2016]).[FN4]
Defendant also contends that he was deprived of a fair trial when, despite County Court's pretrial ruling limiting certain information relating to defendant's prior criminal convictions, the People provided this information to the jury through the testimony of one of the investigating detectives. After a pretrial Sandoval/Molineux hearing, the court ruled that defendant's prior offense, a 1999 conviction for sexual abuse in the first degree following his sexual contact with a child less than 11 years old, was not admissible under a Molineux exception and that defendant's statement to police regarding his sex offender status was to be separated from the case where possible. However, prior to voir dire, defendant stated that he was agreeable to notifying potential jurors that he was a convicted sex offender, as long as a limiting instruction was later given. Thereafter, the court instructed potential jurors on defendant's sex offender status without specifying the nature of defendant's underlying conviction. At trial, the detective testified that she had initially been apprised that the case involved "a possible sex offense" against a young child involving "a sex offender [who] had a previous victim [who] was a six-year-old boy." County Court then interjected, sua sponte, directing the jury to disregard the testimony. Outside the presence of the jury, defendant moved for a mistrial, which motion the court denied, holding that the impact from the detective's disclosure was likely minimal since the jury already knew that defendant was a sex offender and would consider defendant's proposed jury instructions for any corrective action. Prior to deliberations, the court gave the jury a limiting instruction, directing it that defendant's prior criminal history could be used for background only and not as proof of guilt in the present case.
Certainly, the disclosure of defendant's prior conviction for a sex offense against a six-year-old child, a crime with elements nearly identical to the present case, was highly prejudicial [*4]to defendant since it could lead a jury to believe that defendant had a propensity for the crime (see People v DeCarr, 130 AD3d 1365, 1366 [2015], lv denied 26 NY3d 1008 [2015]; see generally People v Callahan, 186 AD3d 943, 946 [2020]). However, given the overwhelming proof presented at trial to support a finding of defendant's guilt and the limiting instruction provided by County Court, we do not find that there is any significant probability that the jury would have acquitted defendant but for the detective's limited disclosure; thus, this nonconstitutional error was harmless (see People v Crimmins, 36 NY2d 230, 241-242 [1975]; People v Damon, 200 AD3d 1323, 1326 [2021]; People v DeCarr, 130 AD3d at 1367) and did not deprive defendant of a fair trial.
Finally, defendant asserts that his sentence is harsh and excessive. We disagree. Although defendant was sentenced to the maximum term on both of his convictions, in light of defendant's criminal history, the serious nature of the offense given the vulnerability of this young victim and defendant's lack of remorse, "we discern neither an abuse of discretion nor extraordinary circumstances warranting a reduction in the interest of justice" (People v Cole, 177 AD3d 1096, 1103 [2019], lv denied 34 NY3d 1015 [2019]; accord People v Burns, 188 AD3d 1438, 1443 [2020], lvs denied 36 NY3d 1055, 1060 [2021]).
Garry, P.J., Reynolds Fitzgerald, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Defendant was found not guilty of predatory sexual assault against a child.
Footnote 2: After questioning the victim outside the presence of the jury, County Court determined that he understood the difference between the truth and a lie, but did not understand the nature of an oath. Therefore, the court ruled that the victim could give only unsworn testimony (see CPL 60.20 [2]).

Footnote 3: Videotaped excerpts from this interview were played for the jury.

Footnote 4: Although defendant does not specifically challenge the weight of the evidence supporting his conviction of endangering the welfare of a child (see Penal Law § 260.10 [1]), the evidence also supports this conviction (see People v Garcia, 203 AD3d 1228, 1229 n [2022]).