■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARREN CROSS, Appellant. [807 NYS2d 711]—

Kane, J. Appeal from a judgment of the County Court of Greene County (Lalor, J.), rendered September 28, 2004, (1) upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the fourth degree and criminal possession of a controlled substance in the third degree, and (2) convicting defendant upon his plea of guilty of the crime of criminal possession of marihuana in the fifth degree.

Defendant, codefendant Anthony Wynn and codefendant Jaime Bobb were in Bobb's apartment when police officers executed a no-knock search warrant. The officers found crack cocaine in Bobb's pants pocket and Wynn's underwear. A box in Bobb's bedroom closet contained crack cocaine, marihuana and a digital scale. In defendant's pockets, police located marihuana and marked buy money from a drug transaction where Bobb sold crack to an undercover police officer and a confidential informant two days earlier. After all three defendants were indicted on several counts, Bobb and Wynn entered into plea agreements and testified against defendant. During trial, defendant pleaded guilty to criminal possession of marihuana in the fifth degree for the marihuana found in his pocket and the jury found him guilty of criminal possession of a controlled substance in the third and fourth degrees based on constructive possession of the crack. County Court sentenced defendant as a second felony offender to an aggregate prison term of 10 to 20 years. He now appeals, addressing only the two counts related to the crack cocaine.

Defendant stipulated as to where the substances were found,

that those substances were cocaine and that the cocaine found in Bobb's pocket weighed in excess of one eighth of an ounce, a weight sufficient to sustain the conviction for criminal possession of a controlled substance in the fourth degree. He does not dispute that Bobb's testimony is sufficient to establish constructive possession of that cocaine. Instead, he asserts that this accomplice testimony was not supported by "corroborative evidence tending to connect the defendant with the commission of [the] offense" (CPL 60.22 [1]; see *People v Besser*, 96 NY2d 136, 146 [2001]). New York's accomplice corroboration rule "does not require independent proof of the elements of the crime"; it "requires only enough nonaccomplice evidence to assure that the accomplices have offered credible probative evidence" (*People v Breland*, 83 NY2d 286, 293 [1994]; see *People v Moore* [*Asante*], 17 AD3d 786, 789 [2005], *lvs denied* 5 NY3d 785, 792 [2005]; *People v Glanda*, 5 AD3d 945, 952 [2004], *lvs denied* 3 NY3d 640, 674 [2004], *cert denied* 543 US 1093 [2005]). Still, "[t]he corroboration must be independent of, and may not draw its weight and probative value from, the accomplice's testimony" (*People v Steinberg*, 79 NY2d 673, 683 [1992]).

Bobb testified that defendant had a key to her apartment, came there on weekends and sold crack cocaine to his customers from that location. While he was there, he would use her phone to remain in contact with his customers. If he had surplus cocaine when he was ready to leave, he would give it to Bobb to sell during the week and she would pay him most of the money that she reaped from those sales when he returned the next weekend. She testified that defendant left some crack the previous weekend and she sold it to the undercover officer and confidential informant two days before the police raided her apartment. During that transaction, when the undercover officer inquired whether he could call her to buy drugs again, she agreed and gave her number, but indicated that if defendant answered the phone he would not sell drugs to someone he did not know. On the night of the raid, defendant arrived when she was not home, used his key and then packaged drugs in her kitchen. After she arrived, she paid him $80 from the prior drug sale. When they heard police outside the door, she and defendant began running toward the bedroom. Defendant told her to grab the bag of cocaine off the table, which she did, placing it in her pocket. Bobb had no prior convictions, but received a favorable plea agreement in connection with her testimony.

Wynn also testified about defendant's customary trips to Bobb's apartment to sell drugs. Defendant would provide drugs

for him to sell on consignment, with Wynn paying defendant a set price after the drugs were sold. On the night of the raid, when Wynn arrived at the apartment, he saw defendant packaging drugs. After defendant gave him 42 bags of crack, Wynn smoked three bags and hid the rest in his underwear. Wynn had three prior felony convictions, received a favorable plea agreement and acknowledged that he would lie to stay out of jail.

Testimony of police officers established that an undercover officer and confidential informant purchased drugs from Bobb at her apartment two days before the police raided that apartment. In that sale, the undercover officer paid Bobb five marked $20 bills. The raid was based on a warrant obtained as a result of that sale. At the time of the raid, defendant and Bobb were found in her bedroom. Evidence seized during the raid included a large bag containing 39 smaller bags of crack cocaine from Wynn's underwear; a bag containing 16 individually wrapped bags of crack from Bobb's pocket; $100 and bags of marihuana from defendant's pockets; a lunchbox containing a digital scale, marihuana and crack cocaine from the closet in Bobb's bedroom; and defendant's personal papers, such as his Social Security card, birth certificate and identification card, from the kitchen table. Serial numbers from four $20 bills seized from defendant's pocket matched the marked buy money from the earlier drug sale.

Although defendant's mere presence in the apartment where drugs were found is insufficient to establish constructive possession, the evidence here provided a link between defendant, the apartment and the drugs (*see People v Banks*, 14 AD3d 726, 727 [2005], *lv denied* 4 NY3d 851 [2005]; *People v Rodas*, 238 AD2d 358, 359 [1997]). Defendant's presence in Bobb's apartment on a Friday night and his possession of the marked bills from a drug sale to Bobb two days earlier harmonize with Bobb's testimony concerning defendant bringing drugs to her apartment on Fridays, packaging them for sale and collecting the proceeds of any mid-week sales when he returned the following Friday. Bobb's testimony was also supported by the police testimony concerning the prior drug sale. Overall, the police testimony and physical evidence were adequate "to assure that the accomplices have offered credible probative evidence" (*People v Breland*, 83 NY2d 286, 293 [1994], *supra*). As the accomplice testimony was amply corroborated, the evidence was sufficient to establish that defendant exercised dominion and control over the drugs found in Bobb's possession. Leaving credibility determinations to the jury which observed the witnesses, and discounting Wynn's testimony entirely, the verdict was not

against the weight of the evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987]).

We find, however, that defendant is entitled to a new trial because County Court withheld its *Sandoval* determination until after the People had rested. "Recognizing the importance of a defendant's informed choice whether or not to testify, in *People v Sandoval* (34 NY2d 371 [1974]) [the Court of Appeals] held that a defendant is entitled to a *pretrial* ruling on the scope of permissible cross-examination as to [past criminal or immoral acts affecting credibility]" (*People v Bennett*, 79 NY2d 464, 468 [1992], citing *People v Sandoval, supra* at 375 [emphasis added]; *see People v Thomas*, 213 AD2d 73, 77 [1995], *affd* 88 NY2d 821 [1996]). While *Sandoval* itself noted that a pretrial ruling may not be necessary in every case, "it expressed a clear preference for advance rulings that has since become absolute, or nearly so, where evidence of criminal, vicious or immoral acts is concerned" (*People v Brazeau*, 304 AD2d 254, 256 [2003], *lv denied* 100 NY2d 579 [2003]).

Here, despite defendant's pretrial motion and counsel's request for a ruling before opening statements, County Court did not address the *Sandoval* issue until after the People rested. By that time, defendant had presented an opening statement and cross-examined all of the prosecution witnesses, committing himself to a defense strategy that would appear to require defendant's testimony. After the court's *Sandoval* ruling, defendant declined to testify. Because the defense strategy may well have been different if the court had issued its *Sandoval* ruling before the trial began, we feel constrained to reverse and grant defendant a new trial (*compare People v Young*, 271 AD2d 751, 751-752 [2000], *lv denied* 95 NY2d 859 [2000] [finding *Sandoval* error to be harmless in light of overwhelming evidence of guilt]).

Mercure, J.P., Peters, Carpinello and Rose, JJ., concur. Ordered that the judgment is modified, on the law, by reversing defendant's convictions of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree; matter remitted to the County Court of Greene County for a new trial on those counts; and, as so modified, affirmed.