People v Maricle (2018 NY Slip Op 01217)





People v Maricle


2018 NY Slip Op 01217


Decided on February 22, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 22, 2018

107895

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
TERRY L. MARICLE, Appellant.

Calendar Date: January 10, 2018

Before: McCarthy, J.P., Devine, Aarons, Rumsey and Pritzker, JJ.


Pamela B. Bleiwas, Ithaca, for appellant, and appellant pro se.
Stephen D. Ferri, Special Prosecutor, Binghamton, for respondent.


McCarthy, J.P.

MEMORANDUM AND ORDER
Appeals (1) from a judgment of the County Court of Cortland County (Campbell, J.), rendered July 30, 2015, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the second degree and unlawful manufacture of methamphetamine in the third degree, and (2) from a judgment of said court, rendered December 10, 2015, which resentenced defendant.
On the day in question, defendant and codefendant Kristina Yerian went to property owned by the parents of codefendant Robert Alberts. The three defendants gathered in a workshop area in the rear of a garage located a few feet from the house. A police officer drove by and noticed light smoke emitting from a
missing window pane in the garage door. When he pulled into the driveway, he smelled a strong chemical odor and noticed that Alberts, who came out to talk to him, appeared nervous. The officer left but, having determined that the smoke and odor indicated an active methamphetamine lab, returned a few minutes later. At the officer's request, Alberts called Yerian out of the garage. After the officer heard noises coming from inside the garage and Alberts did not respond when asked about the presence of any other people, the officer entered the garage. Upon observing defendant seated on a stool in front of a bench in the workshop area, the officer ordered him to leave the garage.
The police thereafter obtained and executed a search warrant, resulting in the seizure from the garage and house of numerous items of equipment, solvents, reagents and precursors used in the manufacture of methamphetamine. Defendant was charged in an indictment with [*2]criminal possession of a controlled substance in the second degree and unlawful manufacture of methamphetamine in the third degree. Following a jury trial, defendant was convicted as charged [FN1]. County Court sentenced defendant to nine years in prison and five years of postrelease supervision on the criminal possession of a controlled substance conviction, and 2½ years in prison and one year of postrelease supervision on the unlawful manufacture of methamphetamine conviction, with the sentences to run concurrently [FN2]. Defendant appeals.
We reverse because the trial evidence was not legally sufficient to convict defendant of either count. In reviewing legal sufficiency, this Court views the evidence in the light most favorable to the People and determines "whether there is any valid line of reasoning and permissible inferences" upon which a rational jury could have found the elements of the charged crimes proven beyond a reasonable doubt on the basis of the evidence admitted at trial (People v Salce, 124 AD3d 923, 924 [2015], lv denied 25 NY3d 1207 [2015] [internal quotation marks and citations omitted]; see People v Reed, 22 NY3d 530, 534 [2014]; People v Bleakley, 69 NY2d 490, 495 [1987]).
As relevant here, to establish criminal possession of a controlled substance in the second degree, the People were required to prove that defendant knowingly and unlawfully possessed "one or more preparations, compounds, mixtures or substances containing methamphetamine, its salts, isomers or salts of isomers and said preparations, compounds, mixtures or substances are of an aggregate weight of two ounces or more" (Penal Law § 220.18 [2]). To establish defendant's guilt of unlawful manufacture of methamphetamine in the third degree, the People were required to prove that defendant possessed "at the same time and location, with intent to use, or knowing that another intends to use[,] each such product to unlawfully manufacture, prepare or produce methamphetamine . . . [t]wo or more items of laboratory equipment and two or more precursors, chemical reagents or solvents in any combination" (Penal Law § 220.73). As relevant to both charges, possession "means to have physical possession or otherwise to exercise dominion or control over tangible property" (Penal Law § 10.00 [8]). Constructive possession can be shown when the defendant has a "sufficient level of control over the area in which the contraband was found" (People v Leduc, 140 AD3d 1305, 1306 [2016] [internal quotation marks, brackets and citations omitted], lv denied 28 NY3d 932 [2016]; accord People v Turner, 27 AD3d 962, 963 [2006]).
A defendant's mere presence in the same location as contraband is insufficient to establish constructive possession (see People v McGough, 122 AD3d 1164, 1166 [2014], lv denied 24 NY3d 1220 [2015]; People v Banks, 14 AD3d 726, 727 [2005], lv denied 4 NY3d 851 [2005]; People v Edwards, 206 AD2d 597, 597 [1994], lv denied 84 NY2d 907 [1994]). Knowledge that the contraband is present is insufficient, standing alone, to show constructive possession (see People v Burns, 17 AD3d 709, 711 [2005]; cf. People v Rivera, 82 NY2d 695, 697 [1993]). Some factors that courts may consider in determining whether a defendant constructively possessed contraband are the defendant's proximity to the contraband, whether the [*3]defendant had keys to the location where the contraband was found, whether the contraband was in plain view, evidence that the defendant had used some of the drugs (when drugs are the contraband at issue), and whether there is witness testimony that the contraband belonged to the defendant (see People v Gaston, 147 AD3d 1219, 1220 [2017]; People v McGough, 122 AD3d at 1166; People v Carpenter, 51 AD3d 1149, 1150 [2008], lv denied 11 NY3d 786 [2008]; People v Young, 48 AD3d 901, 902-903 [2008]; People v Mattison, 41 AD3d 1224, 1225 [2007], lv denied 9 NY3d 924 [2007]; People v Cross, 25 AD3d 1020, 1023-1024 [2006]; People v Burns, 17 AD3d at 711; People v Banks, 14 AD3d at 727).
The evidence at trial demonstrated that defendant and Yerian had been in the garage with Alberts for approximately one hour when the officer arrived. There was no evidence that defendant lived in the house or garage, kept any of his personal belongings there or had keys to the property (compare People v Young, 48 AD3d at 902-903; People v Banks, 14 AD3d at 727-728). When the officer observed defendant in the workshop area, which measured approximately 10 to 12 feet by 20 to 24 feet, defendant was sitting on a stool in front of a bench, not touching anything. No contraband was recovered from defendant himself, nor did the proof establish that he owned or had even touched any of the contraband.
The officer testified that a plastic one-pot methamphetamine lab — essentially a soda bottle in which all of the necessary ingredients are mixed to cause the chemical reactions required to produce methamphetamine — was in plain view on a shelf approximately 20 feet away from defendant. The officer further testified that he smelled a chemical odor, like paint thinner, that he recognized as indicative of an active methamphetamine lab. At trial, however, no evidence was submitted to establish that defendant was familiar with the smells associated with methamphetamine, and the testimony left open the possibility that actual paint thinner was stored in the garage. Although the officer testified that he observed smoke both wafting from and inside the garage, he was unable to locate the source of the smoke. The one-pot contained a clear liquid that was tested and contained methamphetamine. Nevertheless, another officer specially trained in dealing with methamphetamine labs testified that, from looking at the one-pot, he did not know for certain, nor could an average person tell for sure, that it contained drugs. Indeed, that officer obtained negative test results from some of the liquids that he collected from the scene and had believed contained methamphetamine.
Upon execution of the search warrant in the workshop area, the police recovered the plastic one-pot that was observed by the first officer and a second, glass Mason jar one-pot. The following items were also found in the workshop area of the garage: a bag full of cold medicine that can be used as a methamphetamine precursor; various solvents, such as containers of brake fluid, starter fluid and Coleman fuel; chemical reagents, such as drain opener, ammonium nitrate, muriatic acid and batteries containing lithium strips; and various equipment, such as a pill grinder,[FN3] coffee filters, plastic tubing and a face mask. While many of these items were ostensibly in plain sight, the garage was messy and the items were not all together, but were located haphazardly throughout the garage. Additionally, all of these items, individually, are legal to possess and not necessarily indicative of drug manufacturing.
The trial record is devoid of proof that defendant had ever manufactured, used or even seen methamphetamine; if any such proof had been introduced, the jury could possibly infer that [*4]he was aware that these items were equipment and ingredients used to manufacture methamphetamine (compare People v McGough, 122 AD3d at 1166-1167; People v Cross, 25 AD3d 1020, 1022-1023 [2006]; People v McLeod, 281 AD2d 746, 747-748 [2001], lv denied 96 NY2d 921 [2001]). Because the People failed to demonstrate that defendant exercised dominion or control over lab equipment, precursors, reagents, solvents or substances containing methamphetamine, the proof did not establish that defendant knowingly possessed any of those items. Accordingly, inasmuch as the evidence was legally insufficient to establish either count (see People v Huertas, 32 AD3d 795 [2006]; People v Burns, 17 AD3d at 710-711; People v Edwards, 206 AD2d at 597; cf. People v Rivera, 82 NY2d at 697), we dismiss the indictment.
We need not address defendant's other arguments, which have been rendered academic.
Devine, Aarons, Rumsey and Pritzker, JJ., concur.
ORDERED that the judgments are reversed, on the law, and indictment dismissed.



Footnotes

Footnote 1: After the joint trial of all three defendants, Alberts was convicted of the same two counts and Yerian was convicted of the only count against her, criminal possession of a controlled substance in the second degree.

Footnote 2: County Court originally imposed restitution but, upon resentencing, that obligation was eliminated. On appeal, defendant does not raise any issues regarding the resentencing.

Footnote 3: Although the police referred to this item as a pill grinder, the evidence indicated that it may have been a coffee bean grinder.