People v Hayward (2023 NY Slip Op 00461)

People v Hayward

2023 NY Slip Op 00461

Decided on February 2, 2023 

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 2, 2023 

111781
[*1]The People of the State of New York, Respondent,
v
Codie Hayward, Appellant.

Calendar Date:November 17, 2022

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Ceresia and McShan, JJ.

Rural Law Center of New York, Inc., Castleton (Kelly L. Egan of counsel), for appellant.
Michael J. Poulin, District Attorney, Johnstown (Amanda M. Nellis of counsel), for respondent.

Ceresia, J.
Appeal from a judgment of the County Court of Fulton County (Polly A. Hoye, J.), rendered January 25, 2019, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree.
On March 20, 2018, the police were surveilling an apartment building for drug activity. After seeing a vehicle drive away from the building, officers followed it to a nearby parking lot and ultimately took the driver — the confidential informant (hereinafter CI) in this case — into custody. The CI advised them that he had just purchased heroin from defendant. The police applied for and obtained a search warrant for two apartments in the building, which they executed later that day. Upon entering one of the apartments, they encountered defendant and other individuals, and discovered heroin, cocaine and a large quantity of cash. Defendant was thereafter charged by indictment with two counts of criminal possession of a controlled substance in the third degree relative to the cocaine and heroin, respectively (counts 1 and 2), and one count of criminal possession of a controlled substance in the fifth degree relative to the cocaine (count 3).[FN1] Following a jury trial, defendant was found guilty of count 2 and the reduced count 3 (see Penal Law §§ 220.03, 220.16 [1]). Defendant was sentenced, as a second felony drug offender with a prior violent felony, to a prison term of 10 years along with three years of postrelease supervision for his conviction of count 2 and a lesser concurrent term of incarceration for his conviction of the reduced count 3. Defendant appeals.
Defendant contends that his conviction for criminal possession of a controlled substance in the third degree is not supported by legally sufficient evidence and is against the weight of the evidence, because the proof did not show that he possessed a narcotic drug or that he did so with the intent to sell it. Given that defendant's motion for a trial order of dismissal of this count was not directed at the particular arguments now raised on appeal, defendant failed to preserve the legal sufficiency claim (see People v Barzee, 190 AD3d 1016, 1017 [3d Dept 2021], lv denied 36 NY3d 1094 [2021]; People v Bombard, 187 AD3d 1417, 1417 [3d Dept 2020]). "Nevertheless, in reviewing defendant's challenge to the weight of the evidence, we necessarily determine whether all of the elements of the charged crime were proven beyond a reasonable doubt" (People v Gertz, 204 AD3d 1166, 1167 [3d Dept 2022] [internal quotation marks, brackets and citations omitted], lv denied 38 NY3d 1070 [2022]; see People v Casalino, 204 AD3d 1078, 1079 [3d Dept 2022], lv denied 38 NY3d 1070 [2022]). A weight of the evidence analysis requires us to "view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony [*2]and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Barzee, 190 AD3d at 1017 [internal quotation marks and citation omitted]; see People v Bleakley, 69 NY2d 490, 495 [1987]). "In undertaking this analysis, great deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Jones, 202 AD3d 1285, 1286 [3d Dept 2022] [internal quotation marks and citations omitted]).
As is relevant here, "[a] person is guilty of criminal possession of a controlled substance in the third degree when he [or she] knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it" (Penal Law § 220.16 [1]). Count 2 involved the possession of heroin, which is defined as a narcotic drug (see Penal Law § 220.00 [7]; Public Health Law § 3306 [I] [c] [11]). " 'Possess' means to have physical possession or otherwise to exercise dominion or control over tangible property" (Penal Law § 10.00 [8]).
The CI testified that he initially entered the building, went to the third floor, and knocked on the door of the apartment on the right, identified at trial as apartment 3W, which he knew to be defendant's girlfriend's apartment. He heard defendant's girlfriend tell him to go away, so he knocked on the door of the apartment to the left, identified as apartment 3E, which he knew to be defendant's apartment. Defendant opened the door and, after brief discussion, took $80 from the CI and walked over to apartment 3W. Defendant entered that apartment and the CI could see defendant's girlfriend sitting with drugs in front of her. Defendant handed his girlfriend the money, shut the apartment door, opened it again and handed the CI a bundle of 10 bags of heroin.
Police officers testified that when the search warrant was executed later that day, defendant was observed sitting in the living room of apartment 3W, and they saw glassine envelopes and rubber bands in that room. Three other individuals were also present in the apartment. While searching, officers discovered six loose bags of heroin on a mattress in the back bedroom, and also found a pair of pants in that bedroom containing a bundle of heroin and over $1,700 in cash in the pockets. A detective sergeant testified that, based upon his training and experience, the glassine envelopes and rubber bands were typically used for packaging heroin for sale.
In light of this proof, a different verdict would not have been unreasonable, given that defendant was not observed in the same room where the heroin was found and other individuals were also present in the apartment. However, we find that the verdict was not against the weight of the evidence with respect to the possession and intent elements of the crime. With regard to possession, the People relied upon both the drug factory presumption as well as a theory of constructive possession. The [*3]drug factory presumption provides that "[t]he presence of a narcotic drug . . . in open view in a room, other than a public place, under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare for sale such controlled substance is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found" (Penal Law § 220.25 [2]). "The presumption . . . may apply to a defendant apprehended on the premises, but outside of the room where the drugs are found," as long as the defendant is found within close proximity to the drugs (People v Kims, 24 NY3d 422, 434 [2014]). Thus, the presumption has been properly applied even where the defendant and the drugs are located on different floors of a building (see People v Pressley, 294 AD2d 886, 887 [4th Dept 2002], lv denied 98 NY2d 712 [2002]; People v Snow, 225 AD2d 1031, 1031-1032 [4th Dept 1996]). Here, bags of heroin were found in open view on the bed, which, according to photographs received in evidence, was visible from the living room where defendant was arrested.
As for constructive possession, this "requires proof that the defendant exercised dominion and control over the contraband or the area where the contraband was found" (People v Ruffin, 191 AD3d 1174, 1176 [3d Dept 2021] [internal quotation marks and citation omitted], lv denied 37 NY3d 960 [2021]; see People v Smith, 201 AD3d 1126, 1131 [3d Dept 2022], lv denied 38 NY3d 1035 [2022]; People v Elhadi, 304 AD2d 982, 984 [3d Dept 2003], lv denied 100 NY2d 580 [2003]). "While mere presence in an apartment where drugs are found is insufficient to constitute constructive possession, the evidence here created a stronger link between defendant, the apartment and the drugs" (People v Banks, 14 AD3d 726, 727 [3d Dept 2005] [internal citations omitted], lv denied 4 NY3d 851 [2005]). As noted, defendant was observed in the living room of his girlfriend's apartment, located across the hall from his own. Drug packaging materials were found in the living room, and the heroin, some of which was visible, was discovered in the nearby bedroom. This evidence, together with the proof of his sale of heroin from that same apartment earlier in the day, supports a finding that defendant had the requisite dominion and control over the heroin (see People v Paul, 202 AD3d 1203, 1205-1207 [3d Dept 2022], lv denied 38 NY3d 1034 [2022]; People v Cross, 25 AD3d 1020, 1023 [3d Dept 2006]; People v Banks, 14 AD3d at 727). The fact that defendant did not lease the apartment and that other individuals were present "does not preclude a finding of constructive possession since possession may be joint" (People v Elhadi, 304 AD2d at 984). Finally, regarding intent, the jury could infer defendant's intent to sell from the quantity of heroin seized, together with packaging materials and large sums of cash (see People v Smith, 201 AD3d at 1130). Viewing [*4]the evidence in a neutral light and deferring to the credibility determinations of the jury, we are satisfied that the verdict with respect to count 2 is supported by the weight of the evidence (see People v Patterson, 199 AD3d 1072, 1076 [3d Dept 2021], lv denied 37 NY3d 1163 [2022]; People v Bombard, 187 AD3d at 1419).
Defendant next argues that the evidence seized pursuant to the search warrant should have been suppressed because the warrant did not contain a no-knock provision, yet the police rammed open the door to the apartment without first announcing their presence. This argument, however, is unpreserved, as defendant did not raise it as a ground for suppression in his omnibus motion (see People v Gillespie, 205 AD3d 1212, 1215 [3d Dept 2022]; People v McLeod, 189 AD3d 1967, 1968 [3d Dept 2020]).
Defendant also claims that County Court erred in permitting the CI to testify about the drug sale that preceded the execution of the search warrant and defendant's arrest. We disagree. This evidence was appropriately admitted for the non-propensity purposes of proving defendant's identity and intent, as well as providing relevant background information (see People v Paul, 202 AD3d at 1211; People v Palin, 158 AD3d 936, 941 [3d Dept 2018], lv denied 31 NY3d 1016 [2018]; People v Victor, 139 AD3d 1102, 1109 [3d Dept 2016], lv denied 28 NY3d 1076 [2016]; People v Buckery, 20 AD3d 821, 823 [3d Dept 2005], lv denied 5 NY3d 826 [2005]). The court properly minimized any arguable prejudice arising from the admission of this evidence by giving thorough limiting instructions both at the conclusion of the CI's testimony and during final jury instructions. As such, we find no abuse of discretion in the court's evidentiary ruling.
We turn next to defendant's argument that trial counsel's representation was ineffective. With respect to defendant's claim that counsel was deficient in failing to seek suppression of tangible evidence on the ground that the police violated the knock-and-announce rule prior to executing the search warrant, we are unpersuaded. To begin with, it is of course defendant's obligation to establish that a no-knock violation occurred in the first place, a task at which defendant has failed. In advancing this argument in his appellate brief, defendant merely states, as if it is a settled matter of fact, that the police breached the door "without announcing their presence" and that "[t]hey only announced that they were police officers after they entered the apartment." The problem, however, with this position is that it is based solely on conjecture. In reality, the record is silent as to what the police said or did prior to effectuating entry into the apartment. Thus, without resort to inappropriate speculation, it simply cannot be concluded from the record before us that the police failed to knock and announce their presence before forcefully entering the apartment. In that regard, it bears noting that the fact that officers yelled out[*5]"Police. Search warrant" as they entered and that occupants of the apartment were surprised upon the door being broken open sheds no meaningful light on what occurred before that point in time, as those things could have and likely would have occurred whether or not the police had first announced their presence.
Furthermore, while a no-knock provision was neither requested in the warrant application nor authorized in the warrant, our review of the application reveals a sufficient basis to have justified the inclusion of such a provision, inasmuch as the application provided "probable cause to believe that a particular location contain[ed] saleable quantities of a controlled substance, which could be quickly destroyed" (People v Sherwood, 79 AD3d 1286, 1288 [3d Dept 2010] [internal quotation marks and citation omitted]; see CPL 690.35 [4] [b] [i]; see People v Tucker, 173 AD3d 1817, 1818-1819 [4th Dept 2019], lv denied 34 NY3d 938 [2019]; People v Rodriguez, 270 AD2d 956, 956-957 [4th Dept 2000], lv denied 95 NY2d 870 [2000]). As such, because "authorization for a [no-knock entry] would have been given had the proper request been made," suppression would not have been an appropriate remedy (People v Rodriguez, 270 AD2d at 957). We additionally note that the Supreme Court of the United States has held that the interests protected by the knock-and-announce rule — i.e., the protection of life and property and the preservation of privacy — "have nothing to do with the seizure of the evidence, [such that] the exclusionary rule is inapplicable" even in the event of a knock-and-announce violation (Hudson v Michigan, 547 US 586, 594 [2006]). In light of the above, trial counsel cannot be faulted for failing to raise a speculative and meritless claim (see People v Caban, 5 NY3d 143, 152 [2005]; People v Hunter, 175 AD3d 1601, 1604 [3d Dept 2019], lv denied 34 NY3d 1078 [2019]).
Regarding the remaining purported errors, we have considered them and find that they did not constitute deficient performance and are, "at best, second-guessing with the clarity of hindsight" (People v Starnes, 206 AD3d 1133, 1143 [3d Dept 2022] [internal quotation marks and citation omitted], lv denied 38 NY3d 1153 [2022]). Viewing counsel's performance in its totality and as of the time of the representation, we note that counsel engaged in appropriate motion practice, pursued a cogent trial strategy and thoroughly cross-examined the People's witnesses. Bearing in mind that defendant was acquitted of one of the two charged felonies, we are satisfied that defendant received meaningful representation (see People v Baldi, 54 NY2d 137, 147 [1981]; People v Drumgold, 206 AD3d 1044, 1049 [3d Dept 2022], lv denied 38 NY3d 1150 [2022]; People v Hackett, 167 AD3d 1090, 1095 [3d Dept 2018]).
We turn finally to defendant's claim that the sentence was harsh and excessive. Although defendant asserts that he was punished for exercising his right to trial because the sentence he was ultimately [*6]given was significantly longer than that which was associated with the plea deal he was offered prior to trial, this argument is unpreserved, as he failed to raise it at sentencing (see People v Houze, 177 AD3d 1184, 1189 [3d Dept 2019], lv denied 34 NY3d 1159 [2020]; People v Williams, 163 AD3d 1160, 1165 [3d Dept 2018], lv denied 32 NY3d 1170 [2019]). "In any event, the record discloses no vindictiveness on the part of County Court in arriving at the sentence, and the mere fact that the sentence imposed after trial is greater than that offered in connection with plea negotiations is not proof positive that the defendant was punished for asserting his right to trial" (People v Santana, 179 AD3d 1299, 1303 [3d Dept 2020] [internal quotation marks, brackets, ellipsis and citations omitted], lv denied 35 NY3d 973 [2020]). Furthermore, it must be noted that the pretrial offer concerned a plea of guilty to a class D drug felony, as opposed to the class B drug felony for which defendant was convicted after trial (see People v Sheremet, 41 AD3d 1038, 1040 [3d Dept 2007], lv denied 9 NY3d 881 [2007]). In view of defendant's criminal history that included a violent felony, as well as his failure to accept responsibility, we discern no reason to disturb the sentence (see People v Bombard, 187 AD3d at 1420; People v Delbrey, 179 AD3d 1292, 1299 [3d Dept 2020], lv denied 35 NY3d 969 [2020]). Defendant's remaining argument regarding an allegedly misleading statement made by County Court during jury selection has been examined and deemed meritless.
Garry, P.J., and Reynolds Fitzgerald, J., concur.
Lynch, J. (concurring in part and dissenting in part).
We respectfully dissent, in part, as it relates to the suppression issue. To begin, we agree with the majority that defendant did not preserve his contention that the evidence seized pursuant to the search warrant should be suppressed because the police officers failed to provide reasonable notice to the occupants before entering the apartment. That challenge, however, is also presented in the context of an ineffective assistance of counsel claim and may be reviewed in that light.
CPL 690.50 (1) provides, in relevant part, that "[i]n executing a search warrant directing a search of premises . . ., a police officer must, except as provided in [CPL 690.50 (2)], give, or make reasonable effort to give, notice of his [or her] authority and purpose to an occupant thereof before entry." Only "[i]f [the officer] is not thereafter admitted . . . may [he or she] forcibly enter such premises" (CPL 690.50 [1]). CPL 690.50 (2) provides exceptions to the knock-and-announce rule where "(a) [s]uch premises . . . are at the time unoccupied or reasonably believed by the officer to be unoccupied; or (b) [t]he search warrant expressly authorizes entry without notice" (emphasis added). An application for a no-knock search warrant may be based "upon the ground that there is reasonable cause to believe that . . . the property [*7]sought may be easily and quickly destroyed or disposed of" (CPL 690.35 [4] [b] [i]).
Here, the police did not apply for a no-knock warrant and, contrary to the People's appellate argument, the warrant itself did not "expressly authorize[ ] entry without notice" (CPL 690.50 [2] [b]). Nor was there any evidence that the premises searched were unoccupied or that there was reasonable cause for police officers to believe so.
In our view, the record confirms, by the police officers' own trial testimony, that they did not provide any advance notice prior to entering the apartment where defendant was ultimately apprehended. The record shows that members of the involved emergency response team (hereinafter ERT) entered the apartment through a rear door into a kitchen area that led to a living room. When asked how the door was opened, Jason Blowers — a police officer with the City of Johnstown Police Department — explained that "the breacher opened the door, the mechanical breach . . . . He hit the door with a ram." Sergeant Michael Pendrick, the first member of the ERT to enter the apartment, confirmed as much, testifying: "[a]s we approached the rear apartment door . . . another officer had breached the door, the door popped open."
Notably, Pendrick revealed that, "[a]s [the team] entered[,] [they] yelled out, 'Police. Search warrant[,]' and as [he] entered into [the living room he] continued to yell, 'Show your hands.' " Pendrick also explained that he was unaware of what the occupants were doing because "[w]hen [they] hit the door everyone jumped up because of the element of surprise." This candid testimony confirms that the officers effectuated a no-knock entry, despite lacking the authority to do so. Tellingly, the People do not dispute that a no-knock entry occurred here and they acknowledge that police gave notice "[a]s [they] entered" the apartment. CPL 690.50 (1), however, requires pre-entry notice. In light of the violation of the knock-and-announce rule, the further question is whether the violation requires exclusion of the evidence seized.
In Hudson v Michigan (547 US 586 [2006]), the Supreme Court of the United States held that a violation of the knock-and-announce rule did not require suppression of the evidence seized under the federal exclusionary rule and the Fourth Amendment to the US Constitution. The facts of Hudson, however, are distinguishable, for the police did in fact announce their presence upon arriving at the premises, but waited only a short amount of time — "perhaps 'three to five seconds' " — before turning the knob of the unlocked door and entering the home (id. at 588). A similar entry occurred in People v Riddick (45 NY2d 300 [1978], revd on other grounds 445 US 573 [1980]), "when, in response to the investigating officer's knock, [the] defendant's infant son opened the door, and promptly on entering the officers declared their authority and their purpose to arrest [the] defendant" (id. at 315). In that circumstance[*8], the Court of Appeals found that no prejudice resulted from the failure to give notice outside the door, emphasizing that "[w]hat is determinative is that the entry was peaceable" (id.). The point made is that the nature of the entry — i.e., whether it was peaceable or not — defines the significance of the failure to comply with the knock-and-announce rule. In Wilson v Arkansas (514 US 927 [1995]), the Supreme Court of the United States recognized that the "common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment" (id. at 929). The Supreme Court expressed "little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure" (id. at 934; see Hudson v Michigan, 547 US at 606 [Breyer, J., dissenting]).
"What is determinative" here is that the entry was made with a battering ram, without any prior announcement of purpose or authority, an event readily distinguishable from that in Hudson and Riddick (People v Riddick, 45 NY2d at 315). In our view, this entry was not reasonable under either the Fourth Amendment to the US Constitution or our state counterpart (see NY Const, art 1, § 12), which "generally confer[s] similar rights" (People v Robinson, 97 NY2d 341, 350 [2001]).
More than a century ago, the Supreme Court reasoned that the Fourth Amendment applies "to all invasions on the part of the government and its employe[es] of the sanctity of a [person's] home and the privacies of life. It is not the breaking of [the] doors, and the rummaging of [the] drawers, that constitutes the essence of the offence; but it is the invasion of [a person's] indefeasible right of personal security, personal liberty and private property" (Boyd v United States, 116 US 616, 630 [1886]). While concurring in Hudson, Justice Kennedy more recently observed that, "[a]s to the basic right in question, privacy and security in the home are central to the Fourth Amendment's guarantees as explained in our decisions and as understood since the beginnings of the Republic" (Hudson v Michigan, 547 US at 603 [Kennedy, J., concurring]).
As to no-knock warrants in particular, the Court of Appeals in Ferreira v City of Binghamton (38 NY3d 298 [2022]) recently articulated the dangers attendant such a forcible entry, explaining that "when police plan and execute a no-knock search warrant, they effectively take control of the targeted premises, knowingly creating an unpredictable and potentially dangerous condition at a particular premises. . . . [A] no-knock warrant is a charged and volatile situation undertaken at the direction and supervision of municipal actors, who plan and execute the warrant and who can reasonably foresee and take steps to avoid many of the risks occasioned by uncertain reactions to chaotic events when the police forcefully cross the threshold of someone's home. In a [*9]no-knock warrant situation, the police exercise extraordinary governmental power to intrude upon the sanctity of the home and take temporary control of the premises and its occupants" (id. at 317-318 [emphasis added]). Given the dangers involved in a no-knock search of a home and the constitutional rights implicated in doing so, CPL 690.50 — for good reason — requires a court to first determine whether a no-knock entry should be authorized upon a proper request and showing of need (see CPL 690.35 [4] [b]; 690.50 [1], [2] [b]). And yet here, the police officers opted to dispense with the knock-and-announce rule entirely of their own accord and without any defined exigency.
In a situation so fraught with danger, dealing with the forcible entry into the sanctity of the home, the failure to abide by the knock-and-announce rule is not a mere technical violation — particularly since law enforcement made no request for a no-knock warrant and County Court provided no such authorization (compare People v Silverstein, 74 NY2d 768, 770 [1989] [evidence seized pursuant to the execution of a nighttime search warrant need not be suppressed where the warrant authorized a nighttime search even in the absence of such a request in the warrant application]; People v Tucker, 173 AD3d 1817, 1818-1819 [4th Dept 2019] [suppression was not required where search warrant contained a no-knock provision in the absence of a request in the written application insofar as the evidence in the application was sufficient to justify such a provision], lv denied 34 NY3d 938 [2019]; People v Sherwood, 79 AD3d 1286, 1288 [3d Dept 2010] [search warrant executed after 9:00 p.m. pursuant to verbal authorization of City Court granted upon a telephonic request by law enforcement, rather than the sworn and recorded request necessary to execute a nighttime warrant under CPL 690.35 (4) (a) and 690.45 (6), deemed a technical violation where "there exist(ed) a basis for (a) nighttime search in the initial written application"]; People v Rodriguez, 270 AD2d 956, 956-957 [4th Dept 2000] [nighttime search that was neither requested in the warrant application nor authorized in the warrant itself deemed a technical violation where the application contained a request for execution "without notice"], lv denied 95 NY2d 870 [2000]).[FN2] To the contrary, since the core protections of the statute were directly violated, thereby implicating defendant's constitutional rights, the evidence seized as a result should be suppressed (see CPL 710.20 [1]; Hudson v Michigan, 547 US at 630-632 [Appendix to opinion of Breyer, J., dissenting]; People v Tarallo, 48 AD2d 611, 611 [1st Dept 1975]).
Although the failure to pursue suppression "does not necessarily equate to a deprivation of meaningful representation, counsel may still be deemed ineffective in the rare case where a defendant shows the absence of a strategic or legitimate explanation in counsel's strategy not to" (People v Zeh, 144 AD3d 1395, 1396 [3d Dept 2016[*10]] [internal citations omitted], lv denied 29 NY3d 954 [2017]). Despite having made a motion to suppress, defense counsel completely failed to challenge the no-knock aspect of the officers' entry into the apartment. There is no apparent strategic or other legitimate explanation for this omission. Certainly, there was no risk in adding a challenge to the unauthorized entry. In our view, counsel's failure to do so deprived defendant of his constitutional right to meaningful representation. Under these circumstances, the judgment of conviction should be reversed and the indictment dismissed.
McShan, J., concurs.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Count 3 was later reduced to the class A misdemeanor of criminal possession of a controlled substance in the seventh degree.

Footnote 2: These cases concern the provisions of the CPL setting forth the timeframe in which a warrant must be executed, not the provisions of the CPL dealing with no-knock searches. Authorization to perform a nighttime search does not concomitantly provide police officers with the authority to effect a forcible no-knock entry (see CPL 690.35 [4] [a] [i]; 690.45 [6]). In our view, the failure to execute a warrant within the 6:00 a.m. to 9:00 p.m. timeframe set forth in CPL 690.30 is not analogous to a situation where police engage in an unauthorized no-knock entry through the use of force.