People v Alvarez (2025 NY Slip Op 02822)

People v Alvarez

2025 NY Slip Op 02822

Decided on May 8, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 8, 2025

113034
[*1]The People of the State of New York, Respondent,
v
Eric Alvarez, Appellant.

Calendar Date:March 28, 2025

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, McShan and Powers, JJ.

Matthew C. Hug, Albany, for appellant.
Andrew J. Wylie, District Attorney, Plattsburgh (Melissa D. Whyman of counsel), for respondent.

McShan, J.
Appeal from a judgment of the County Court of Clinton County (William Favreau, J.), rendered June 3, 2021, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the third degree (three counts).
Pursuant to an investigation into suspected narcotic trafficking at an apartment in the City of Plattsburgh, Clinton County, a search warrant was effectuated, and defendant was discovered in the residence lying in bed alongside a bag of narcotics next to his pillow. Inside the bag were 62 tie-off bags of fentanyl and 18 tie-off bags of crack cocaine. Thereafter, defendant was charged by indictment with three counts of criminal possession of a controlled substance in the third degree — counts 1 and 2 based upon an intent to sell cocaine and fentanyl, respectively, and count 3 based upon the amount of fentanyl. Following a jury trial, defendant was found guilty as charged and was later sentenced, as a second felony offender, to prison terms of nine years, to be followed by three years of postrelease supervision, on counts 2 and 3, and a prison term of seven years, to be followed by three years of postrelease supervision, on count 1, all running concurrently. Defendant appeals.
We affirm. We turn first to defendant's challenge to the weight of the evidence, which entails that we "view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Bonilla, 229 AD3d 850, 850-851 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 1018 [2024]; see People v Osman, 228 AD3d 1007, 1008 [3d Dept 2024]). Relevant here, as to counts 1 and 2, "[a] person is guilty of criminal possession of a controlled substance in the third degree when he [or she] knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it" (Penal Law § 220.16 [1]). As to count 3, "[a] person is guilty of criminal possession of a controlled substance in the third degree when he [or she] knowingly and unlawfully possesses . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-half ounce or more" (Penal Law § 220.16 [12]).[FN1]
The trial evidence established that law enforcement had been investigating suspected drug trafficking occurring at an apartment in Plattsburgh based upon complaints from a neighbor about frequent traffic in and out of the apartment. While surveilling the apartment building, law enforcement observed two hand-to-hand transactions whereby an individual known to law enforcement as Billie Ray Hendrie,[FN2] who resided in the apartment, met with an individual and made an exchange of drugs [*2]for money. Ultimately, after law enforcement arranged a controlled buy from Hendrie, the substance that was procured from that transaction tested positive as a heroin and fentanyl compound. Law enforcement subsequently executed a search warrant on the apartment and discovered defendant lying on a bed next to a bag that contained narcotics. Specifically, inside the large vacuum-sealed bag were two smaller "sandwich" bags that respectively contained 62 tie-off baggies of suspected heroin or fentanyl and 18 tie-off bags of crack cocaine, which law enforcement testified was indicative of the intent to sell.[FN3] Forensic testimony from a scientist at the State Police Forensic Investigation Center established that defendant's DNA was present on the sandwich bag containing the tie-off bags of fentanyl that was recovered from inside the larger vacuum-sealed bag. Law enforcement acknowledged that, although they were aware that Hendrie and his partner resided inside the apartment during their investigation, up until the time that the search warrant was executed, they were unfamiliar with and had not previously observed defendant there. After finding defendant in the apartment, law enforcement located Hendrie and his partner in the laundry room, outside of the apartment, and they were arrested. The People proffered the testimony of Hendrie's partner, who explained that she had met defendant through a friend of Hendrie and had permitted defendant to stay at their home and sell drugs. According to the partner, defendant provided her with drugs in exchange for permitting his use of the home, which occurred three times prior to the date that defendant was arrested. The day prior, the partner rented a vehicle to drive down to New York City to pick up defendant and then travel back to Plattsburgh so defendant could sell his drugs.
For his part, defendant testified that he had met Hendrie and the partner in 2020 when they approached him and asked if he knew where to get drugs. After helping them in that endeavor and observing how much drugs they had purchased, defendant sought to establish a friendship and travelled with them that night to Plattsburgh. According to defendant, that was the only occasion that he had spent time with them prior to the night he was arrested. Defendant testified that, on the night prior to his arrest, Hendrie and the partner contacted him to let him know they were in New York City and asked him to hang out. By his account, defendant then travelled back with them to Plattsburgh, under the impression that he was going to engage in a sexual relationship with the partner. However, defendant acknowledged that the relationship never occurred and that the three of them simply went back to sleep. Defendant denied ever selling drugs in Plattsburgh and maintained that he went with Hendrie and the partner in order to use drugs, which they would supply. Defendant testified that, on the morning of his arrest and after the partner had left for work, Hendrie [*3]brought a box into the room with drugs and told defendant that he could "indulg[e]." According to defendant, he did not use any drugs but did take them out of the bag to examine them, which was predicated on his curiosity regarding the fentanyl. To that end, defendant maintained that he did not personally use fentanyl but acknowledged that he did use cocaine. Explaining the presence of the bag of drugs on the pillow next to him, defendant testified that he wanted to ensure that Hendrie's dog could not get to it.
Although a different verdict would not have been unreasonable had the jury credited defendant's account that the controlled substances belonged to Hendrie and the partner, the verdict is not against the weight of the evidence. Viewing the evidence in a neutral light and deferring to the credibility determinations of the jury, defendant's constructive possession of the recovered drugs was established by his proximity to the bag and the partner's testimony (see People v Durfey, 170 AD3d 1331, 1332 [3d Dept 2019], lv denied 34 NY3d 980 [2019]; People v Elhadi, 304 AD2d 982, 983 [3d Dept 2003], lv denied 100 NY2d 580 [2003]; see also People v Kendricks, 226 AD3d 1150, 1151 [3d Dept 2024], lv denied 41 NY3d 1003 [2024]). To that end, although there was proof that law enforcement was already aware that Hendrie was selling controlled substances from the residence, the partner's testimony was sufficient to establish that the recovered substances belonged to defendant, and defendant's contrary testimony merely presented an issue of credibility which was within the jury's province to resolve (see People v Saunders, 232 AD3d 1039, 1042 [3d Dept 2024]). As it relates to count 3, defendant stipulated to the weight of the fentanyl recovered, thus satisfying the statutory requirement (see Penal Law § 220.16 [12]). Finally, with respect to the intent to sell as relevant to counts 1 and 2, the jury could reasonably determine from the packaging and the "amount of drugs at issue, that . . . defendant possessed them for the purpose of financial gain, rather than personal consumption" (People v Poulos, 233 AD3d 1169, 1176 [3d Dept 2024] [internal quotation marks and citations omitted]; see People v Hayward, 213 AD3d 989, 992 [3d Dept 2023], affd 42 NY3d 753 [2024]).
Defendant next contends that County Court erred in denying his request for a lesser included charge of criminal possession of a controlled substance in the seventh degree as it relates to counts 1 and 2. During the jury charge conference, defendant initially requested a lesser included offense of criminal possession of a controlled substance in the seventh degree as it related to those counts. The People opposed, noting that count 3 already presented a lesser included relative to the alleged possession of fentanyl and instead proposed that criminal possession of a controlled substance in the fourth degree would be more appropriate on count 1, if any lesser included charge was provided at all. Defense [*4]counsel responded, "I would take that," and, based upon that representation, County Court reserved decision, and ultimately considered defendant's entitlement to a lesser included charge of criminal possession of a controlled substance in the fourth degree. Accordingly, as County Court did not expressly render a determination on defendant's initial request (see CPL 470.05 [2]), we find that his argument on appeal is unpreserved (see People v Green, 90 AD3d 1151, 1152 [3d Dept 2011], lv denied 18 NY3d 994 [2012]; People v Burdick, 266 AD2d 711, 713 [3d Dept 1999]; see also People v Zakrzewski, 7 AD3d 823, 824 [3d Dept 2004]; see generally People v Soriano, 121 AD3d 1419, 1423 [3d Dept 2014]).
Finally, defendant argues that his sentence is unduly harsh and excessive and asks that we reduce it in the interest of justice (see CPL 470.15 [6] [b]). We note that defendant has a lengthy criminal history and received a period of incarceration below the maximum allowed based upon his second felony offender status (see Penal Law §§ 60.04 [3]; 70.70 [3] [b] [i]; see also Penal Law § 220.16). Having considered the totality of circumstances presented in this case, we decline defendant's request (see People v Guy, 233 AD3d 1352, 1358 [3d Dept 2024]; People v Saunders, 232 AD3d at 1043).
Aarons, J.P., Pritzker, Reynolds Fitzgerald and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Cocaine and fentanyl are considered narcotics pursuant to the Public Health Law (see Penal Law § 220.00 [5], [7]; Public Health Law § 3306 [I] [c] [11]; [II] [b] [4]; [c] [9]). Count 1 was predicated on the possession of cocaine and counts 2 and 3 were predicated on the possession of fentanyl.

Footnote 2: Hendrie pleaded guilty stemming from the same set of facts underlying this case (People v Hendrie, 232 AD3d 1067 [3d Dept 2024]).

Footnote 3: Defendant stipulated that the aggregate weight of the recovered cocaine exceeded 1/8 ounce, and the aggregated weight of recovered fentanyl exceeded 1/2 ounce.